# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KEVIN DONALD ADAMS,

      Defendant-Appellant.

UNPUBLISHED
February 21, 2017

No. 328028
Livingston Circuit Court
LC No. 14-022388-FC

Before: HOEKSTRA, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of three counts of first-degree criminal sexual conduct (CSC-I) with a person under the age of 13 while defendant was 17 years old or older, MCL 750.520b(2)(b), and two counts of second-degree criminal sexual conduct (CSC-II) with a person under the age of 13 while defendant was 17 years old or older, MCL 750.520c(2)(b). He received concurrent sentences of 25 to 50 years' imprisonment for the CSC-I convictions and 10 to 15 years' imprisonment for the CSC-II convictions. Defendant appeals as of right. Because the prosecutor's conduct did not deprive defendant of a fair trial, defendant is not entitled to a new trial based on newly discovered evidence, and defense counsel did not provide ineffective assistance, we affirm.

## I. FACTS

At most times relevant to this case, defendant was the live-in boyfriend of the victim's mother. Although defendant is not the victim's father, he is the father of the victim's half-brother and, according to witnesses, defendant acted as "father figure" to the victim. Defendant moved out of that house sometime around December 2012, but the victim continued to have some contact with defendant thereafter. At trial, the victim testified that defendant had sexually abused her on numerous occasions, beginning when she was 9 or 10 years old. She testified to five specific sexual acts, each of which occurred before the victim reached the age of 13.

The victim told her mother about the sexual abuse sometime in the summer of 2014, when she wrote her mother a note explaining what had occurred. At the time that she made this disclosure, the victim feared that she had contracted a sexually transmitted disease from

defendant.[1] When asked why she had waited to report the abuse, the victim provided multiple reasons. She testified that she was scared that defendant would be "mad" if she told and that she feared he would hurt her because he was bigger than her and had been in the Army. However, she also testified that she did not think that her mother would believe her because she was only a child and that she did not want her mother to be mad and discontinue her brother's contact with defendant, adding that "I know what it's like not to be able to see my dad."

After the victim disclosed the sexual abuse, her mother filed a police report and the victim participated in a forensic interview. In addition, after the victim made her allegations, Matthew Adolph, a friend of defendant's, confronted the victim, telling her that she was "about to ruin a man's life" and that she needed "to come forward and say to me right now exactly the truth." Adolph indicated that, despite this pressure, the victim "didn't back down" from her allegations.

Defendant did not testify at trial. Defense counsel attempted to rebut the victim's testimony by presenting the testimony of defendant's father and two family friends, each of whom testified that, based upon their observations, defendant and the victim enjoyed an appropriate relationship in which defendant acted as the victim's father figure. All three testified that the victim did not appear to be scared of defendant. Defense counsel also cross-examined the victim and her mother about trips the victim took with defendant and presented photographs of these trips as evidence to show that the victim was comfortable around defendant. In closing, defense counsel argued that the victim was lying for some unknown reason, stating "[i]t's not my job to prove why she's lying just that she is." To support the assertion that the victim had lied about being sexually abused by defendant, defense counsel pointed out inconsistencies in the victim's testimony, questioned her delay in reporting the incidents, and indicated that, had the incidents actually occurred, the victim would not have been so comfortable around defendant. The jury convicted defendant as noted above, and defendant now appeals as of right.

## II. PROSECUTORIAL MISCONDUCT

On appeal, defendant argues that the prosecutor committed misconduct during her closing and rebuttal arguments by commenting on defendant's failure to produce evidence, which thereby improperly shifted the burden of proof to defendant. In particular, the prosecutor noted that there was no evidence that the victim had a motive to lie, there was no evidence that the victim had been inconsistent in her statements regarding the sexual abuse, and there was no evidence that children who are victims of sexual abuse act "differently" around their abusers.

At trial, defense counsel objected to portions of the prosecutor's rebuttal argument, meaning that those issues have been preserved for our review. See *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "Where issues of prosecutorial misconduct are preserved, we review them de novo to determine if the defendant was denied a fair and impartial trial." *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). However, insofar as defendant challenges the prosecutor's remarks during closing argument, defendant failed to offer a timely

---

[1] It turned out that the victim had a yeast infection.

objection or to request a curative instruction. Consequently, these challenges are unpreserved, and our review of these unpreserved claims is for plain error affecting defendant's substantial rights. *Brown*, 294 Mich App at 382. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). "Further, we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 329-330.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 294 Mich App at 382. "[W]e consider issues of prosecutorial misconduct on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.*

However, a prosecutor may not attempt to shift the burden of proof to a defendant. *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). In this respect, this Court has explained:

> A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof. Also, a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof. However, a prosecutor's argument that inculpatory evidence is undisputed does not constitute improper comment. A prosecutor may also argue that the evidence was uncontradicted even if the defendant is the only person who could have contradicted the evidence. [*Id.* (internal citation omitted).]

Moreover, prosecutorial arguments attacking the credibility of a theory advanced by the defense do not constitute an attempt to shift the burden of proof. *Callon*, 256 Mich App at 331. Once the defendant either explicitly or implicitly advances a theory of the case, the prosecutor may properly offer "commentary on the weakness of defendant's theory of defense." *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005); *People v Reid*, 233 Mich App 457, 478; 592 NW2d 767 (1999).

In this case, with respect to the unpreserved portion of defendant's claims, defendant challenges the following remarks by the prosecutor during closing:

> And now I submit to you that [the victim] is to be believed. Ladies and gentlemen you have heard this child who is now 14 tell you about incidents that happened to her starting around the age of nine or 10. . . . [The victim] has no reason to lie. Let's think about it. Now we all have lied. I have told my husband no he's not gaining weight or yes the lawn looks great when it's got some patches on it. Because sometimes we do that. We lie for reasons. We lie to make people happy. Sometimes we lie to get out of trouble. Kids do that a lot of times. They

-3-

lie to get out of trouble. Do those apply to [the victim]? Is she in trouble? No. There was no evidence brought before this Court that somehow she was in trouble. She was taken to the police station you know late in the evening. She's been to LACASA. She's gone to court before. She's been in court now in front of 14 strangers. And sitting in a room in front of the person who did these things to her and she said them. And she said it consistently. And there's not one piece of evidence that she said anything different to the witness Matt Adolph, to the police officers. There's not one piece of evidence that she was inconsistent in her before [sic] trip to court or here. Because she has told from her heart the truth of what has happened to her. And is this fun? Is this something that you do? . . .

***

And I know when you are listening to [defense counsel's] closing think about it. Where's the proof of a lie? What's the motivation? There is none. Because there is no reason but for the fact that this was a kid that was scared and it finally boiled. . . . So listen carefully, think about [it], use your common sense.

Contrary to defendant's arguments, he has not shown plain error in the prosecutor's remarks. Fairly read, the prosecutor's remarks did not "assert that defendant has to prove he is not guilty." *People v Abraham*, 256 Mich App 265, 277; 662 NW2d 836 (2003). Instead, based on the evidence, the prosecutor permissibly advanced the theory that the victim was worthy of belief. See *Thomas*, 260 Mich App at 455. And, in doing so, the prosecutor commented on the weakness of defendant's theory of the case. That is, in opening statements, the defense counsel explained that, contrary to the victim's accusations, the defense theory was that nothing happened. Then, through cross-examination of the victim and testimony from defendant's friends and father, the defense asserted the theory that the victim's allegations were not worthy of belief because she was "comfortable" around defendant, she was inconsistent in claiming to be scared of defendant while continuing to see him, and she delayed disclosing the abuse. In this context, by arguing that the victim had no reason to lie, the prosecutor did not shift the burden of proof, but merely attacked the credibility of defendant's theory of the case. See *Callon*, 256 Mich App at 331. We are not persuaded that such commentary was improper, particularly in view of defense counsel's attacks on the victim's credibility. See *People v Orlewicz*, 293 Mich App 96, 107; 809 NW2d 194 (2011).

Moreover, even assuming some impropriety in the remarks specifically challenged by defendant, any prejudicial effect of the challenged comments was minimal and could have been alleviated by a timely objection and an appropriate curative instruction. *Callon*, 256 Mich App at 329–330. Indeed, viewing the trial as a whole, it was clear that defendant was not prejudiced by the prosecutor's remarks. Elsewhere during closing arguments the prosecutor expressly acknowledged that it was her burden to prove the elements of the crime beyond a reasonable doubt. Cf. *People v Steanhouse*, 313 Mich App 1, 35; 880 NW2d 297 (2015), lv gtd on other grounds 499 Mich 934 (2016). Likewise, defense counsel addressed the jury on the burden of proof during closing arguments, emphasizing that the defense did not have to introduce evidence and that the prosecutor bore the burden of proof. Further, the trial court ultimately informed the jury that it was to take its understanding of the law from the court—not the attorneys; and the trial court correctly instructed the jury on the prosecutor's burden of proof as well as the fact that

defendant was presumed innocent and did not have to "prove his innocence or to do anything." Jurors are presumed to follow their instructions, and these instructions cured any prejudicial effect. See *id.*; *People v Henry*, 315 Mich App 130, __; __ NW2d __ (2016); slip op at 11.

Likewise, defendant's arguments pertaining to the prosecutor's rebuttal arguments do not entitle him to relief on appeal. In her rebuttal, the prosecutor specifically addressed defense counsel's argument that the jury should conclude that the victim had fabricated the story because she did not exhibit any different behaviors after the alleged incidents occurred but instead continued to appear comfortable around defendant. The prosecutor stated:

> Counsel then says well you know um, [the prosecutor] has the burden but she shifted it. Well here's the thing ladies and gentlemen that yes I have [the] burden and the defendant doesn't have to do anything. But in this case he chooses to and so you may consider what evidence he presented or didn't present. So he could've when he chose to present he could've presented it. Why didn't he present a witness that says victims of child sexual abuse act a different [way?]

To a certain extent, particularly as a response to defense counsel's closing argument, it was not improper for the prosecutor to comment on the lack of evidence supporting the defense theory that the victim should have acted differently around defendant following the sexual abuse. See *Reid*, 233 Mich App at 477 ("[I]t is not error to comment on the failure of the defense to produce evidence on a phase of the defense upon which the defendant seeks to rely.") (citation omitted). See also *Steanhouse*, 313 Mich App at 35. Admittedly, the prosecutor's phrasing is somewhat confusing and perhaps overbroad. Nevertheless, even if the prosecutor's remarks were improper, defendant would not be entitled to relief. Defense counsel objected to this statement and the trial court held a bench conference on the objection, after which the prosecutor rephrased her argument, omitting any reference to defendant's failure to present evidence and instead arguing that the defense theory had no basis in the evidence.[2] See *Fyda*, 288 Mich App 463-464. Moreover, as noted, both attorneys informed the jury of the prosecutor's burden of proof, and the trial court accurately instructed the jury on the burden of proof. Given that jurors are presumed to follow their instructions, any potential error by the prosecutor was harmless. See *Steanhouse*, 313 Mich App at 35; *Henry*, 315 Mich App at __; slip op at 11.

### III. NEWLY DISCOVERED EVIDENCE

Defendant next argues that he is entitled to a new trial based on evidence produced at a subsequent and separate trial on termination of parental rights. Specifically, during termination proceedings approximately eight months after defendant's trial, the victim's mother shared her suspicions that the victim may have been having a relationship of some kind with the mother's 18-year-old boyfriend. Defendant now speculates that, not wanting to disclose the relationship to her mother, the victim fabricated her allegations of sexual abuse against defendant as an excuse for her fears about having a disease. Thus, according to defendant, this "new" evidence

---

[2] Although defense counsel objected, defendant did not request a curative instruction and, accordingly, a specific curative instruction was not given at that time.

provides the victim with a motive to fabricate and "seriously undermines" the victim's credibility. Defendant argues he is entitled to a new trial or, at a minimum, an evidentiary hearing for factual development on this issue.

"Historically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence. This policy is consistent with requiring parties to 'use care, diligence, and vigilance in securing and presenting evidence.' " *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012) (citations omitted).

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and internal citation omitted).]

The defendant bears the burden of satisfying each part of the *Cress* test. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).

In this case, defendant's claim fails because he has not shown that the evidence was newly discovered and that he could not, using reasonable diligence, have discovered and produced the evidence at trial. To the contrary, the record clearly establishes that the speculations about a relationship between the victim and her mother's boyfriend were known to defendant, and his attorney, at the time of trial. See *id.* at 281 ("[E]vidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial."). In this respect, at his sentencing hearing, defendant asserted his belief that the victim was having a sexual relationship with her mother's boyfriend, that the victim "assumed that she had a sexual[ly] transmitted disease from that man," and that, not wanting to tell her mother, the victim "blamed it on" defendant. Defendant specified that these "facts would have come out at trial," and he accused his attorney of providing ineffective assistance by not presenting all of defendant's evidence. Given that this evidence was known to defendant and his attorney at the time of trial, it is not "newly discovered" and defendant is not entitled to a new trial. See *id.*

In contrast, defendant contends that the evidence in question was newly discovered because the victim's mother did not testify under oath to her suspicions until the termination hearing held after defendant's criminal trial and after the sentencing hearing. This argument is unavailing. By his own admission, defendant knew of these allegations before trial; and, because he was aware of this evidence, he had the burden of "using reasonable diligence" to try to discover and produce material evidence for his trial. *Id.* at 283. In other words, rather than wait for the victim's mother to testify to her suspicions at the termination hearing, due diligence required defendant to question the victim's mother—or the victim and the mother's boyfriend— about this known issue at trial. See *id.* at 283-284. Having failed to pursue known evidence in a timely manner, defendant cannot now claim that he is entitled to a new trial on the basis of newly discovered evidence. *Id.* at 284.

Accordingly, defendant is not entitled to a new trial. Given that the undisputed facts demonstrate that defendant has failed to satisfy his burden under the *Cress* test, there is also no need for further factual development, and we decline defendant's request to remand for an evidentiary hearing. Cf. *id.* at 291 n 7.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that he is entitled to a new trial because his counsel failed to present evidence of a sexual relationship between the victim and her mother's boyfriend at trial.

A defendant claiming ineffective assistance bears the burden of proving "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). To make this showing, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). When no evidentiary hearing has been held, "our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

In this case, defendant has not established that he was denied the effective assistance of counsel. Initially, we note that evidence of the victim's purported sexual conduct implicates Michigan's rape shield statute, MCL 750.520j. Accordingly, to present evidence of an alleged sexual relationship between the victim and another man at trial, defense counsel would have been required to make an offer of proof and to demonstrate the relevance of this evidence. MCL 750.520j(2); *People v Hackett*, 421 Mich 338, 350; 365 NW2d 120 (1984). Yet, defendant wholly fails to address the rape shield law on appeal, and there is nothing in the lower court record to demonstrate that defense counsel could have made an offer of proof that would have warranted admission of the evidence in question. In particular, there is nothing in the lower court record evincing any basis for defendant's belief that the victim had a relationship with her mother's boyfriend. Cf. *People v Arenda*, 416 Mich 1, 11-12, 14; 330 NW2d 814 (1982). Without such evidence, defendant has failed to establish the factual predicate of his ineffective assistance claim, *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), and we cannot conclude that counsel was ineffective for failing to advance the theory of a hypothetical relationship between the victim and her mother's boyfriend.[3]

---

[3] Although not part of the lower court record, even if we considered the termination transcript offered by defendant in connection with his motion to remand, defendant would not be entitled to relief. At the termination hearing, the victim's mother offered nothing but unfounded suspicions

Moreover, even assuming the evidence could have been admitted, we cannot see that counsel's decision not to pursue the evidence in question was objectively unreasonable. At best, the evidence set forth during the termination proceedings is extremely weak, consisting of nothing more than the conjectures and surmises of the victim's mother. Counsel was not ineffective for failing to present such a weak theory to the jury. See *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). Given the paucity of the evidence demonstrating a relationship between the victim and her mother's boyfriend, there is also not a reasonable probability that such evidence would have made a difference in the outcome of the proceedings. *Id.* See also *People v Jackson*, 313 Mich App 409, 432; 884 NW2d 297 (2015) ("[D]efense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense.") (citation omitted). Consequently, defendant has not established his ineffective assistance claim.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ Michael J. Riordan

---

of a relationship between her boyfriend and the victim based primarily on the fact that they were both out of the house at the same time on one occasion. The victim's mother also provided vague impressions at the termination hearing to the effect that she thought her boyfriend and the victim were "acting very funny" and "something didn't set right" in her stomach. However, the victim's mother also acknowledged that the victim denied a relationship with the boyfriend. Moreover, the prosecutor has offered evidence that the mother's boyfriend denied any relationship with the victim. In these circumstances, speculative, vague allegations from the victim's mother are not a sufficient offer of proof that the victim had engaged in sexual conduct with her mother's boyfriend. See MCL 750.520j(2); MRE 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *People v King*, 297 Mich App 465, 476; 824 NW2d 258 (2012); *People v Williams*, 191 Mich App 269, 273; 477 NW2d 877 (1991). Thus, even considering the termination transcript, defense counsel was not ineffective for failing to pursue introduction of this evidence because such efforts would have been futile. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).