PEOPLE v LaVEARN

Docket No. 98721. Decided March 17, 1995. On application by the
people for leave to appeal, the Supreme Court, in lieu of
granting leave, reversed the judgment of the Court of Appeals,
and remanded the case to the Court of Appeals for further
proceedings. Rehearing denied *post,* 1231.

Joseph L. LaVearn was convicted by a jury in the Detroit Record-
er's Court, George A. Best, II, J., of first-degree murder and
possession of a firearm during the commission of a felony. The
Court of Appeals, WAHLS, P.J., and SULLIVAN and BRENNAN,
JJ., remanded the case to determine whether the defendant
was denied the effective assistance of trial counsel (Docket No.
150480). The court, Bruce U. Morrow, J., denied the defendant's
motion for a new trial. Following remand, the Court of Ap-
peals, FITZGERALD, P.J., and MICHAEL J. KELLY and W. J.
CAPRATHE, JJ., reversed and remanded for a new trial because
of defense counsel's failure to present an intoxication defense
and failure to call the defendant as a witness on his own
behalf. The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY,
and Justices BOYLE, RILEY, MALLETT, and WEAVER, the Supreme
Court *held:*

Defense counsel's performance was not deficient, and the
defendant showed no cognizable claim of prejudice. Confidence
in the outcome of the trial is in no way undermined because
perjured testimony was not presented.

1. A claim of ineffective counsel requires a showing that
counsel's performance was deficient and that the deficient
performance prejudiced the defense. Every effort must be made
to eliminate the distorting effects of hindsight, and the defen-
dant must overcome the presumption that, under the circum-
stances, the challenged action might be considered sound trial
strategy. Further, the defendant must show that there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.

2. In this case, defense counsel chose between two defenses
with significant evidentiary problems. He eschewed a weak
defense that offered the possibility of a second-degree murder
conviction, in favor of a defense that offered the possibility of a

complete acquittal and avoided the ethical problems that would have arisen had the defendant testified that he lacked the intention to kill. Nothing suggests that counsel was deficient in making the choice or that the selection significantly affected the outcome of the trial.

3. Defense counsel did not violate the defendant's constitutional rights by advising him not to present a defense known by both to be perjurious. Such behavior would be wholly incompatible with established standards of ethical conduct, and thus, as a matter of law, could not establish prejudice in the sense that it would have constituted a reasonable probability that but for counsel's performance the result of the proceeding would have been different.

Reversed and remanded.

Justice LEVIN, dissenting, stated that peremptory disposition is not appropriate; factual and legal assessment is required. It is clear from the inconsistencies in the testimony that defense counsel knew that there was evidence supporting an intoxication defense and chose not to use it and pursue such a defense. A finding of intoxication would have permitted the jury to convict the defendant of second-degree murder or a lesser included offense. It is manifestly wrong for a defendant's lawyer to discount such a strategy out of hand without considering its possible benefits.

Further, the Court of Appeals did not imply that defense counsel was subject to criticism for failing to present perjured testimony in support of a weak defense. There was sufficient evidence for defense counsel to independently verify the defendant's intoxication. The majority's suggestion that this case concerns the decision of the lawyer to avoid the use of perjured testimony is not adequately supported.

Peremptory reversal of the Court of Appeals belittles its efforts in the disposition of this case, as reflected in its carefully written opinion, and deprives the defendant and his counsel of an opportunity to fully brief and orally argue in support of the decision of the Court of Appeals. It also does not provide safeguards against hasty and ill-considered decisions. Lost is an opportunity to educate the justices concerning the state of the record and the law through briefing and oral argument, and an opportunity for conference discussion by the justices after oral argument. Peremptory disposition, without plenary consideration, full briefing, oral argument and an opportunity for the profession to file briefs as amici curiae, should be reserved for

cases in which the law is settled and factual assessment is not required.

Justice CAVANAGH joined with Justice LEVIN to grant or deny leave to appeal.

201 Mich App 679; 506 NW2d 909 (1993) reversed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Carolyn Breen,* Assistant Prosecuting Attorney, for the people.

*Bell & Gardner, P.C.* (by *Athina T. Siringas*), for the defendant.

PER CURIAM. The defendant was convicted of first-degree murder and felony-firearm. However, the Court of Appeals reversed the convictions and remanded the case for a new trial on the ground that the defendant had been denied the effective assistance of trial counsel. We reverse the judgment of the Court of Appeals, and remand the case for consideration of the defendant's other claims.

I

In its opinion of reversal,[1] the Court of Appeals provided this factual account:

Defendant's convictions stem from the June 20, 1991, shooting death of Steven Walker in the City of Detroit. The decedent and six other men were gathered in front of a house on Hasse Street around 1:50 A.M. The house was in the middle of the block about three hundred feet west of Nancy, the cross street to the east. Witnesses testified at trial that this area was known for drug trafficking. A car drove past the group to the end of the street

[1] 201 Mich App 679; 506 NW2d 909 (1993).

and turned north so that it was positioned with its driver's side perpendicular to and facing the group. Five seconds after the car stopped, the driver, allegedly defendant, commenced shooting out of the driver's side window. Three or four shots rang out and after a pause, two more, following which the car sped off. One of the shots killed Steven Walker. One of the men jumped in a vehicle and gave chase. He caught up with defendant's vehicle and shot at it, wounding the defendant in the leg. Defendant's fourteen-year-old brother, Jason, was a passenger in the car and was also wounded. Defendant and his brother were apprehended by [the Hazel Park police as they drove through that city. The police] found $192 and two grams of cocaine in defendant's sock. Several spent nine-millimeter casings were retrieved from the car and matched with three found on the street near the home where the shots were fired. [201 Mich App 680-681.]

The defendant was charged with first-degree (premeditated) murder,[2] and possession of a firearm during the commission of that felony.[3] Following an unsuccessful motion to quash the information, the defendant was tried before a jury, which convicted him of first-degree murder and felony-firearm.

During the trial, the defense presented two witnesses, but the defendant did not testify. After the parties had rested, defense counsel argued to the jury that the prosecution had presented only circumstantial evidence, had offered no motive, and had failed to present evidence of premeditation. Further, defense counsel emphasized weaknesses in the identification testimony (the defendant and his brother are white males, but the prosecution testimony was inconclusive regarding both the

[2] MCL 750.316; MSA 28.548.
[3] MCL 750.227b; MSA 28.424(2).

race and gender of the person who shot the decedent).

After twenty-six minutes of deliberation, the jury found the defendant guilty, as charged. He was sentenced to the mandatory terms of life for first-degree murder and two years for felony-firearm.

On the defendant's motion, the Court of Appeals remanded this case for a *Ginther*[4] hearing on the question whether the defendant was denied the effective assistance of trial counsel.[5] The trial judge's successor conducted an evidentiary hearing at which trial counsel, the defendant, and three other witnesses testified. At the conclusion of the hearing, he denied the defendant's motion for new trial.

Following the remand, the Court of Appeals reversed. It found that defense counsel's failure to present an intoxication defense and his failure to call the defendant as a witness on his own behalf warranted a new trial:

> Testimony presented at the evidentiary hearing held with regard to defendant's claim of ineffective assistance of counsel revealed that before trial defense counsel was aware of defendant's claim of intoxication and aware that defendant had witnesses who could corroborate the fact that he was intoxicated on the night of the shooting. Defense counsel testified that defendant told him that he was "quite drunk" at the time of the shooting. Furthermore, at least two people who were with defendant just before the shooting told defense counsel that defendant had been drinking that night. Additionally, defense counsel, who had previously represented defendant in connection with two or more drunken driving charges, was well

---

[4] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

[5] Unpublished order of the Court of Appeals, issued December 22, 1992 (Docket No. 150480).

aware of defendant's longstanding drinking problem.

Witnesses who testified at the evidentiary hearing indicated that just before the shooting, defendant was "really drunk." Defendant testified that he had been drinking heavily the day of the shooting and that he had a longstanding drinking problem. Defendant also indicated that he wanted to testify in his own behalf at trial to explain why he was in the neighborhood where the shooting occurred and that he was drunk when the shooting occurred.

After reviewing the record, we believe defense counsel's failure to present an intoxication defense deprived defendant of a defense that might have made a difference in the outcome of the trial. If defendant had been able to show through his witnesses and through his own testimony that he was intoxicated at the time of the shooting, such evidence would have justified acquittal of first-degree murder. Defendant's voluntary intoxication would have negated the element of premeditation and deliberation necessary to convict him of first-degree murder. Counsel's failure to present the witnesses and to put defendant on the stand to testify in his own behalf deprived defendant of a substantial defense. Defendant has successfully established his claim of ineffective assistance of counsel. [201 Mich App 684-685.]

The Court of Appeals concluded by saying that, in light of the reversal on the ineffective-assistance issue, it was not necessary to address the other claims raised by the defendant.

The prosecutor has filed an application for leave to appeal.

II

The standard for determining whether a defendant has been denied effective assistance of counsel is provided in *People v Pickens,* 446 Mich 298;

521 NW2d 797 (1994), in which we adopted the standard stated in *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

In this case, the Court of Appeals indicated that it was drawing the standard from *People v Tommolino,* 187 Mich App 14, 17; 466 NW2d 315 (1991). Since *Tommolino* also adopted the *Strickland* standard, there is no need to discuss further whether an appropriate standard has been employed in this case.

III

In its opinion of reversal, the Court of Appeals observed that voluntary intoxication can be a defense to first-degree premeditated murder, and that the record of the *Ginther* hearing confirms that significant evidence could have been presented in support of such a defense. All of that is true. The defendant's trial attorney could have employed an intoxication defense, which, if suc-

cessful, would have reduced the conviction to second-degree murder.[6]

However, intoxication was not the only available defense in this case. As noted above, the prosecution witnesses were unable to agree on the race of the occupants of the car from which the shots were fired, and there was even some uncertainty regarding the gender of the shooter. The trial record gives no hint of a motive, and there was at least a short gap of time between the events immediately surrounding the crime and the defendant's apprehension in Hazel Park. Using these facts, defense counsel argued to the jury that it is far from certain that a person who is driving a car is the same person who controlled a vehicle at some earlier point.

Defense counsel had at least two choices for a defense strategy—intoxication and misidentification. In truth, however, neither had a significant likelihood of success. The potential defense of intoxication would have been weakened by the apparent purposefulness of the defendant's actions. Further, neither the report of the arresting officer nor the hospital records provided any support for an intoxication defense.[7] And, of course, even a successful intoxication defense would have reduced the first-degree murder charge only to second-degree murder.

---

[6] First-degree murder is punished with a mandatory term of life in prison without possibility of parole. MCL 750.316, 791.234(4); MSA 28.548, 28.2304(4). See also MCL 791.234(6); MSA 28.2304(6), as amended by 1994 PA 217, which may take effect pursuant to § 2 of that act. The penalty for second-degree murder is imprisonment for life or any term of years. MCL 750.317; MSA 28.549.

[7] Though he was stopped for speeding through Hazel Park, there was no testimony that the defendant was experiencing any difficulty driving his automobile or that he was manifesting any signs of intoxication. Defense counsel subpoenaed the hospital records, but they contained no indication that the defendant was intoxicated at the time of admission.

The more general defense based on reasonable doubt and possible misidentification was also probably doomed from the outset. The shell casings in the defendant's car matched those found at the scene, and the fact that the defendant himself was evidently shot as he fled the scene provided significant confirmation of the prosecution's case.[8]

Asked at the *Ginther* hearing to explain why misidentification was used as a defense, counsel mentioned the absence of corroborating testimony from the arresting officer or the hospital. He also noted that the intoxication defense "would have put the gun in his [the defendant's] hand." Further, because the defendant admitted to defense counsel a few hours after the arrest that he had fired the shots with the intention of killing someone named "Junior,"[9] calling the defendant as a witness could have led to a similar admission being presented to the jury, either on direct examination[10] or in the course of cross-examination. Counsel also testified at the *Ginther* hearing that the defendant had agreed with the defense strategy.

IV

Counsel's explanation was found credible and persuasive by the judge who presided at the *Ginther* hearing, and it was error for the Court of Appeals to conclude that effective assistance meant employing the intoxication defense in this case.

---

[8] Evidence that the defendant was shot fleeing the scene included the report of the witness who shot at the car ("I think I got them bitches; I rocked the car") and the fact that there were bullet holes in the defendant's car.

[9] The defendant and Junior had engaged in drug transactions.

[10] "A lawyer shall not knowingly offer evidence that the lawyer knows to be false." MRPC 3.3(a)(4).

In *Strickland,* the United States Supreme Court stated that a claim of ineffective counsel requires a showing that "counsel's performance was deficient" and a showing that "the deficient performance prejudiced the defense." 466 US 687. The United States Supreme Court further explained that "every effort [must] be made to eliminate the distorting effects of hindsight," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 US 689. Finally, the Court placed on the defendant the obligation to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 US 694.

In this case, the defendant has satisfied none of these criteria. Defense counsel was faced with a choice between two defenses with significant evidentiary problems.[11] He eschewed the weak defense that offered the possibility of a second-degree murder conviction, in favor of the weak defense that offered the possibility of a complete acquittal and that avoided the ethical problems that would have arisen had the defendant testified that he lacked the intention to kill. Nothing in the materials before us suggests that counsel was "deficient" in making this choice or that the selection significantly affected the outcome of the trial.

V

The Court of Appeals in this case implied, perhaps inadvertently, that trial counsel violated his client's constitutional rights by advising his client

---

[11] The defenses were sufficiently inconsistent that they could not have been presented as alternatives with any reasonable hope of success.

not to present a defense known to both to be perjurious.

The holding of the Court of Appeals, which seemingly would require an attorney to call a witness to present testimony known to be false, "is wholly incompatible with the established standards of ethical conduct" promulgated as conditions for the privilege of practicing law in the state of Michigan. *Nix v Whiteside,* 475 US 157, 175; 106 S Ct 988; 89 L Ed 2d 123 (1986).

As *Nix* establishes, a defendant has no right to testify falsely. *Id.* at 173. Thus, as a matter of law, counsel's conduct could not establish prejudice in the sense that it would have constituted a reasonable probability that but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is defined as follows: "[a] reasonable probability is a probability sufficient to *undermine confidence* in the outcome," *Strickland v Washington,* 466 US 694. (Emphasis added.)

As the entire Court agreed in *Nix,*

> The proposition that presenting false evidence could contribute to (or that withholding such evidence could detract from) the reliability of a criminal trial is simply untenable. . . . To the extent that Whiteside's claim rests on the assertion that he would have been acquitted had he been able to testify falsely, [he] claims a right the law simply does not recognize. "A defendant has no entitlement to the luck of a lawless decision maker, even if a lawless decision cannot be reviewed." [*Id.* at 185-186 (Blackmun, J., concurring, joined by Brennan, Marshall, and Stevens, JJ.).]

Counsel's performance was not deficient and defendant has shown no cognizable claim of prejudice. Confidence in the outcome of the trial is in no

way undermined by the fact that perjured testimony was not presented.

For these reasons, we reverse the judgment of the Court of Appeals and remand this case to the Court of Appeals for consideration of the issues reserved in the penultimate paragraph of the Court of Appeals opinion. MCR 7.302(F)(1).

BRICKLEY, C.J., and BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

LEVIN, J. I would deny leave to appeal, and dissent from the peremptory reversal of the Court of Appeals. I could join in an order granting leave to appeal to consider the issues decided without oral argument or plenary consideration in the majority opinion.

I

The majority's decision to peremptorily reverse the Court of Appeals belittles its efforts, in the disposition of this case, as reflected in its carefully written opinion,[1] and deprives Joseph LaVearn and his counsel of an opportunity to fully brief and orally argue in support of the decision of the Court of Appeals.

Today's peremptory order reflects an increasingly common method of deciding cases, a method that does not provide safeguards against hasty and ill-considered decisions, a method that is unsafe.

When this Court grants leave to appeal, there is an opportunity to educate the justices concerning the state of the record and the law through oral argument, as well as visually through briefs. A justice who may have missed a significant point of law or fact on perusal of the materials considered

[1] 201 Mich App 679; 506 NW2d 909 (1993).

before voting for peremptory reversal might be enlightened and persuaded in the course of oral argument.

Also lost, when this Court acts without plenary consideration, is the opportunity for conference discussion after oral argument.

Peremptory disposition, without plenary consideration, full briefing, oral argument and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required.[2] In the instant case, factual and legal

---

[2] *People v Wright,* 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little,* 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn,* 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc,* 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia,* 436 Mich 872, 872-873 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo,* 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens,* 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey,* 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm,* 437 Mich 35, 38-39; 467 NW2d 4 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp,* 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority,* 440 Mich 852, 852-856 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston),* 440 Mich 1205, 1205-1207 (1992) (LEVIN, J., dissenting); *In re Reinstatement of Callanan,* 440 Mich 1207, 1207-1209 (1992) (LEVIN, J., dissenting); *McFadden v Monroe Civil Service Comm,* 440 Mich 890, 890-891 (1992) (LEVIN, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc),* 440 Mich 891, 891-893 (1992) (LEVIN, J., dissenting); *Marzonie v ACIA,* 441 Mich 522, 535-539; 495 NW2d 788 (1992) (LEVIN, J., dissenting); *People v Waleed,* 441 Mich 902, 902-903 (1992) (LEVIN, J., dissenting); *People v Hardison,* 441 Mich 913, 914-916 (1993) (LEVIN, J., dissenting); *People v Justice,* 441 Mich 916, 917-919 (1993) (LEVIN, J., dissenting); *People v LaClear,* 442 Mich 867, 867-871 (1993) (LEVIN, J., dissenting); *Auto-Owners Ins Co v City of Clare,* 446 Mich 1, 16-18; 521 NW2d 480 (1994) (LEVIN, J., dissenting); *Weisgerber v Ann Arbor Center for the Family,* 447 Mich 963, 964-969 (1994) (LEVIN, J., dissenting); *Howard v White,* 447 Mich 395, 405-410; 523 NW2d 220 (1994) (LEVIN, J., dissenting).

assessment is required. Peremptory disposition is not appropriate.

## II

The Court of Appeals found that LaVearn was denied effective assistance of trial counsel because of his lawyer's failure to present an intoxication defense.

The gist of the majority opinion is that La-Vearn's lawyer, David Goldenberg, chose between two equally weak defenses: misidentification rather than intoxication. The majority finds that Goldenberg did not put LaVearn on the stand in support of an intoxication defense because he had told Goldenberg he had intended to kill "Junior," a person thought to be in the crowd at the time of the shooting.

The trial court did not make a specific factual finding at the *Ginther*[3] hearing regarding the potentially "perjurious" nature of LaVearn's testimony if he had testified regarding an intoxication defense.

## III

Turning to the defense presented by Goldenberg —that LaVearn had not conclusively been identified as the shooter—several witnesses identified LaVearn's automobile as the one from which the

See *Schweiker v Hansen,* 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt,* 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa,* 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").

[3] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

shots were fired from the driver's side. When the police stopped LaVearn's automobile (six to seven minutes later), he was driving. The defense was basically that no one saw exactly who fired the shots, and someone else in the car might have fired them. Nevertheless, Goldenberg did not put any witnesses on the stand to support this speculation.[4]

The majority refers to the gap of time between the shooting and the arrest in Hazel Park, suggesting that LaVearn may not have been driving the automobile when the shots were fired.[5] However, after the shooting, a person immediately gave chase and shot at the automobile. When the Hazel Park police stopped LaVearn's automobile, there were bullet holes on the driver's side, and La-Vearn had been shot in the left leg. It seems clear that LaVearn was driving the automobile during the shooting, even if the shot was fired by someone else in the automobile.

There also was evidence that LaVearn had been drinking heavily with friends in the neighborhood before the shooting. At the *Ginther* hearing, the friends testified that a third person had left with LaVearn and LaVearn's brother in LaVearn's automobile. This third person was gone when La-Vearn was arrested. But Goldenberg apparently did not even interview LaVearn's drinking companions before the trial. Even if the third party had been dropped off before the crime, the friends' testimony could have been helpful. The prosecu-

---

[4] Goldenberg called only two defense witnesses, both affiliated with the police. The first, a Detroit police officer, testified that he had tested LaVearn's hands for gunshot residue. But on cross-examination, he admitted that the test was performed too late after the incident to expect to discover any residue.

The other defense witness was a Detroit Police Department chemist, who testified that it was possible to find residue despite the time delay, and that he had found no residue from the test on LaVearn.

[5] *Ante* at 214.

tion suggested in closing argument that LaVearn
—who lived in Madison Heights—would only have
been in that neighborhood to commit a crime.

IV

The majority concludes that an intoxication de-
fense would have been just as ineffective as the
misidentification defense. It states that LaVearn
acted purposefully.[6] However, the evidence showed
that witnesses who testified about the defendant's
actions were drunk and about 300 feet away.
Another witness, a security guard who was only
ten feet away from the automobile, described the
automobile as doing a loop, or angling into the
street.

The majority also misconstrues the evidence of
LaVearn's drunkenness, stating that neither the
arresting officer nor the hospital records contained
"any support for an intoxication defense."[7] How-
ever, the hospital where LaVearn was taken never
tested his blood-alcohol level, although he was
suffering from a gunshot wound. The arresting
officer was never asked at trial whether LaVearn
smelled of alcohol or acted drunk. LaVearn had,
however, been driving 58 MPH in a 35 MPH zone.
Considering that the lawyer did not mention La-
Vearn's intoxication at trial, it would not be sur-
prising for the officer to say nothing of alcohol,
even if he had smelled it. At the *Ginther* hearing,
LaVearn stated that the officer paid no attention
to his level of sobriety because of the gunshot
wound.

Even if LaVearn did not take the stand, his
drinking companions were available to testify that
he was drunk shortly before the shooting. Golden-

[6] *Id.* at 214.
[7] *Id.* at 214 and n 7.

berg stated that he did not call them because they would have placed LaVearn near the scene of the crime. This was inconsistent with his trial "strategy," which was largely based on LaVearn being in the automobile, albeit not firing the gun.

## V

There are additional factual errors in the majority's conclusion that Goldenberg chose not to allow LaVearn to testify in an effort to avoid presenting perjured testimony. To begin with, it is far from clear that LaVearn "admitted to defense counsel a few hours after the arrest that he had fired the shots with the intention of killing someone named 'Junior' . . . ."[8] The majority relies heavily on this "fact," although Goldenberg's *Ginther* testimony appears to contradict itself.[9]

Goldenberg first testified that LaVearn said he was just driving by and happened to see Junior at 2:00 A.M. in a crowd 300 feet away. He intended, Goldenberg said, to shoot Junior.[10] However, Goldenberg later stated that LaVearn told him "He was just trying to scare them . . . not to really hit because he was over 300 feet away . . . ." Indeed, he stated at the *Ginther* hearing that he had told Goldenberg he was only trying to scare Junior.

Even if LaVearn did confess, other witnesses were available to testify that he was intoxicated. Goldenberg testified that LaVearn agreed to use a misidentification defense, and, therefore, not tes-

---

[8] *Id.* at 215.

[9] Indeed, one reading of the transcript could be that LaVearn told Goldenberg he fired over the head of a crowd to scare "Junior"—not to kill anyone.

[10] Judging from his testimony at this point, it is not entirely clear that LaVearn even saw Junior in the distant crowd: he "saw [Junior] . . . he thought Junior was in that particular crowd . . . [he] stuck his arm out the window and shot down [the] Street."

tify on his own behalf. LaVearn claims he told Goldenberg during the trial that he wanted to put his friends on the stand to testify about his drinking. Goldenberg denies this.

What becomes clear from the inconsistencies in the testimony is that Goldenberg knew that there was evidence supporting an intoxication defense and chose not to use it and pursue such a defense. As the majority observes, a finding of intoxication would have permitted the jury to convict LaVearn of second-degree murder or a lesser included offense.[11] It is manifestly wrong for a defendant's lawyer to discount such a strategy out of hand without considering its possible benefits.

The Court of Appeals did not, as the majority suggests in part v, imply that Goldenberg was subject to criticism for failing to present perjured testimony in support of a weak defense.[12] The trial court did not find that LaVearn's testimony would have been perjurious. Rather, the trial court found that Goldenberg was not ineffective in failing to present an intoxication defense because he was unable to corroborate LaVearn's testimony from "unbiased" sources. There was, however, sufficient evidence for Goldenberg to independently verify LaVearn's intoxication. The majority's suggestion that the instant case concerns the decision of the lawyer to avoid the use of perjured testimony is not adequately supported.

CAVANAGH, J. I join Justice LEVIN and would either grant or deny leave to appeal.

[11] *Ante* at 214 and n 6.
[12] *Id.* at 216-218.