# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 3, 2017

Plaintiff-Appellee,

v

No. 332376
Midland Circuit Court
LC No. 15-006074-FC

JACK CHRIS BIERI,

Defendant-Appellant.

Before: CAVANAGH, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Defendant was convicted by a jury of two counts of criminal sexual conduct, first degree (CSC-1), MCL 750.520b, and one count of criminal sexual conduct, second degree (CSC-2), MCL 750.520c. The circuit court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 455 months to 70 years in prison for both counts of CSC-1, and 172 months to 70 years in prison for CSC-2. On appeal, defendant argues that he was denied the effective assistance of counsel and that the trial court abused its discretion when it denied his request for state funds for an independent scientific expert. We affirm.

## I. FACTS

The complainant, JE, was 11 years old in December 2014. Defendant, who was in a relationship with the complainant's mother at the time, had moved into their home in or around November 2014. On December 31, the complainant's mother drank alcohol and defendant gave the complainant's mother some type of medication, perhaps Paxil. JE was on prescription medication, including a sleep aid, which she took on December 31. JE went to bed around 11:30 p.m. in her mother's bedroom. The complainant's mother took a shower sometime after that, and while she was in the shower, defendant called to her several times, asking whether she was "done yet." When she got out of the shower but was still in the bathroom, the complainant's mother heard defendant talking to JE, so she looked in the bedroom and saw defendant rubbing JE's back and shoulders and asking her repeatedly, "Are you doing good? Are you all right? Doing good?"

Later that evening, defendant left the living room, where he had been with the complainant's mother. During his absence, the complainant's mother needed to use the bathroom, and when she got to the bathroom she heard defendant in her bedroom again. The complainant's mother testified that she "peeked" in the bedroom, where she again saw defendant

rubbing JE's back and shoulders and asking her whether she was all right. At some point after that, defendant suggested that the three of them watch a movie together in the bedroom. The complainant's mother and defendant joined JE on the bed, with JE in between her mother and defendant. Defendant shared a blanket with JE while her mother had a separate blanket. The complainant's mother began to fall asleep, but she remembered that at some point, JE left to take a shower, complaining that she felt "really dirty."

The next morning, JE told her mother that defendant had "had sex with her." The complainant's mother took JE to the hospital, where she was examined by a sexual assault nurse examiner (SANE) and treated for a genital laceration. According to the nurse, the laceration was probably caused by a forced penetration. The nurse also testified that JE told her that she had been sleeping when defendant "pulled down his pants, then he pulled down her pants on the bed and put his private parts in her private parts." JE also told her that defendant had "licked my pee-pee," fondled her "[i]n my pee-pee and my butt," and "French kissed" her on the mouth, neck, and ear. According to the nurse, JE also stated that defendant "told her not to tell her mom and to keep it a secret."

## II. INEFFECTIVE ASSISTANCE

Defendant argues that trial counsel was ineffective for failing to "fully challenge" the evidence by thoroughly cross-examining witnesses, and for failing to object to hearsay testimony introduced by the complainant's mother and the SANE nurse. Defendant also contends that defense counsel should have explored alternative theories for the complainant's injury, including the possibility of "alternate abusers," by calling witnesses whom defendant had requested. These arguments are not persuasive.

A defendant bears a heavy burden to show that counsel made errors so serious that he was not performing as the counsel guaranteed by the Sixth Amendment, and the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v McGraw*, 484 Mich 120, 142; 771 NW2d 655 (2009), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must meet two criteria: first, he must "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that he was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 US at 687. Second, the defendant must show that the deficient performance was prejudicial. *Id*. Prejudice is established where there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id*. at 694; *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

First, defendant notes that the SANE nurse testified that the complainant's injury had likely occurred between 12 and 24 hours before her examination on January 1, 2015. Defendant argues that defense counsel should have questioned the complainant or her mother regarding the complainant's whereabouts during that period. However, defendant has not suggested that the complainant was with someone other than himself or her mother in the 24-hour period before the incident in question, nor does he suggest that any evidence existed to this effect. Moreover, during a pretrial hearing, defense counsel told the court that defendant had failed to participate in the preparation of his defense beyond his stipulation that he was not the attacker. Based on

defense counsel's representations, which defendant does not refute on appeal, counsel had no reason to seek information regarding the complainant's whereabouts before the incident in question because defendant had not informed him that this information would support an alternative explanation for her injuries. Because defendant has not shown that this line of questioning would have been beneficial to his case, he cannot demonstrate that defense counsel was ineffective for failing to pursue it.

Next, defendant asserts that defense counsel was ineffective for failing to question certain prosecution witnesses, including two police officers who were involved with transporting evidence, a serologist at the Michigan State Police Bridgeport Laboratory who sent evidence to a Northville location, a Computer Crimes Unit officer who took information from an iPod to send for further analysis, and a forensic scientist who analyzed the physical evidence for DNA. Defendant does not argue that these witnesses were important to his defense, or that their testimony on cross-examination would have been pertinent, let alone helpful, to his defense. Additionally, it is well-established that an attorney's decisions whether to question witnesses are presumed to be matters of trial strategy. See *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016). Defendant has not demonstrated that trial counsel's decisions were inconsistent with reasonable trial strategy.

Defendant also argues that defense counsel should have objected to the admission of the nurse's testimony concerning the complainant's statements disclosing the identity of her assailant, and defendant's alleged statement to the complainant to keep the assault a secret. According to defendant, these statements were inadmissible hearsay because they did not fall within the medical diagnosis or treatment exception of MRE 803(4). MRE 803(4) provides that "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment" are an exception to the hearsay rule. In *People v Garland*, 286 Mich App 1, 8-9; 777 NW2d 732 (2009), we stated that "[t]he rationale supporting the admission of statements under this exception is the existence of (1) the reasonable necessity of the statement to the diagnosis and treatment of the patient, and (2) the declarant's self-interested motivation to speak the truth to treating physicians in order to receive proper medical care."

Where a victim of sexual assault has identified her assailant to a medical provider, our Supreme Court has held that such a statement "can . . . be admissible under the medical treatment exception to the hearsay rule if the court finds the statement sufficiently reliable to support that exception's rationale." *People v Meeboer*, 439 Mich 310, 330; 484 NW2d 621 (1992). The Court further stated that identification of the assailant to the medical provider may be important for purposes of providing medical treatment because, for instance, the medical provider may need to know the identity of the assailant in order to assess the potential for pregnancy and the potential for pregnancy problems related to genetic characteristics, as well as the potential for sexually transmitted diseases, including AIDS (which the Court noted cannot be detected in the early stages after a sexual assault). *Id*. at 328-329. Another rationale is that the identity of the assailant "allow[s] the physician to structure the examination and questions to the exact type of trauma [a] child recently experienced." *Id*. at 329. In addition, for child victims of sexual assault, the Court stated that "[a] physician must know the identity of the assailant in order to

prescribe the manner of treatment, especially where the abuser is a member of the child's household," noting that if the child will be returning to an abusive home, the physician should be aware "whether the child will have the opportunity to heal once released from the hospital." *Id.* at 329-330.

In the instant case, defense counsel was not ineffective for failing to object to the nurse's testimony because the complainant's statement identifying her assailant was reasonably necessary for her treatment and diagnosis under *Meeboer*, and thus fell within the hearsay exception in MRE 803(4). The nurse's knowledge of the assailant's identity and awareness of the possibility that, as a presumably sexually active adult, he could be infected with various STDs, may have influenced her treatment plan. Important too was the fact that defendant was living in the complainant's household.

Additionally, the complainant had a self-interested motivation to speak truthfully in order to obtain medical treatment. See *Garland*, 286 Mich App at 8-9. The complainant's mother testified that the complainant appeared to be in physical pain the morning after the assault, and this testimony was corroborated by the nurse's assessment that her injury would have been painful. Moreover, because the complainant was over the age of ten, "there was a rebuttable presumption that she understood the need to tell the truth to the nurse." *Id.* at 9. Defense counsel was not ineffective for failing to object to testimony that was admissible under MRE 803(4).

Defendant argues that defense counsel should have objected to the nurse's testimony that the complainant told her during the examination that defendant had directed her not to tell anyone about the assault. According to defendant, this testimony was hearsay and was not admissible under MRE 803(4) because the statement was not made for purposes of medical treatment. This testimony may have been admissible under MRE 803(4) because it concerned the complainant's safety when she returned to the family home and the likelihood of future assaults. See *Meeboer*, 439 Mich at 329-330. However, it is not necessary for our analysis to determine whether this evidence falls under the hearsay exception in MRE 803(4) because defendant cannot show that he was prejudiced by its admission, and thus by counsel's decision not to object. The evidence presented was ample and included the complainant's testimony and the treatment and diagnosis testimony discussed above, the evidence of the complainant's injury, and forensic evidence showing that defendant's DNA was found on the complainant's face and that defendant's DNA was consistent with DNA found in the complainant's underwear. In light of this evidence, defendant cannot show that the outcome of the case would have been different but for any error by counsel in failing to object to this challenged testimony.

Defendant complains that counsel did not object to the testimony by the complainant's mother, but his argument is completely unsupported by any authority or citations to the record and he does not delineate any specifics but merely refers to the mother's testimony as a whole. He states that the mother's testimony was "hearsay" but then implies that it may have been offered for reasons other than the truth of the matter asserted. His appellate argument is so undeveloped that we deem it abandoned. *People v Bosca*, 310 Mich App 1, 29; 871 NW2d 307 (2015).

Lastly, defendant contends that defense counsel was ineffective for failing to call witnesses he had suggested. According to defendant, the complainant previously accused other people of touching her, and these "other people" may have been responsible for her injury as well as any "age-inappropriate sexual knowledge." Defendant argues that the witnesses' testimony would not have been barred by the rape-shield statute, MCL 750.520j, because evidence of specific instances of a complainant's sexual activity may be admissible in certain circumstances. These arguments are not persuasive.

Defendant does not indicate whether and to what these witnesses would have testified and thus does not adequately explain how the testimony of these witnesses would have been admissible under the statute. Decisions regarding "whether to call or question witnesses are presumed to be matters of trial strategy." *Solloway*, 316 Mich App at 189 (quotation marks and citation omitted). Defendant has not shown that defense counsel's decision to not call his witnesses was inconsistent with trial strategy and has failed to establish that defense counsel was ineffective.

## II. INDEPENDENT EXPERT

The trial court denied defendant's pretrial request to approve state funds to pay for an independent laboratory to retest the forensic evidence. According to defendant, he needed an expert to retest the evidence because the DNA evidence had been moved several times to different facilities, and defendant suggested that someone could have tampered with it. The prosecutor noted that the handling of the evidence had been thoroughly documented, and that defendant could explore any chain-of-custody issues during cross-examination. The trial court's decision was not an abuse of its discretion.

MCL 775.15 permits a trial court to approve state funds for a "material witness" where an indigent defendant can show that such witness will testify "in his favor" and that without the testimony, the defendant "cannot safely proceed to trial." In addition, "[t]o obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert." *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006). Further, "[i]t is not enough for the defendant to show a mere possibility of assistance from the requested expert;" rather, "[w]ithout an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness." *Id*. (citations omitted). Defendant in the instant case has not met the standard set forth in *Carnicom*.

Defendant argues first that a defense expert could have "counsel[ed] his [attorney] as to how DNA might be transferred" other than by sexually assaulting the complainant. This argument does not show how an expert would have benefitted defendant's case. Rather, it suggests a "mere possibility of assistance[.]" See *id*.

Defendant also argues that an independent expert might have provided testimony favorable to the defense in response to the testimony of a prosecution witness that she had obtained a partial DNA profile from the complainant's underwear that was consistent with defendant's DNA. According to defendant, a defense expert could have testified from his or her "point of view" with regard to this evidence and questioned the "certainty" expressed by the

prosecutor's experts. Defendant does not provide any support for this argument or suggest a contrary "point of view" that a defense expert would have testified to regarding this evidence. Thus, we do not see how an independent expert's analysis of this evidence would have been beneficial to defendant.

A forensic scientist who testified for the prosecution explained that her test results matching the DNA on the complainant's circumoral (around the mouth) swab to defendant's DNA were also based on a "partial DNA profile" because she was able to obtain comparative results at just 23 of the 24 genetic markers used in the test. However, she also testified that the results were sufficient to *match* the DNA on the swab to the known sample from defendant's buccal (inside cheek) swab. Defendant has not shown that an independent expert would have refuted this testimony, either. Thus, defendant's argument that an expert would have benefited his case with respect to this evidence is entirely speculative and does not meet the requirements of *Carnicom*.

Defendant emphasizes that the only conclusive DNA evidence was found on the complainant's circumoral swabs, which is not proof of any of the charges. Defendant asserts that an expert would have been beneficial in addressing the DNA evidence, but simply does not explain how his or her analysis would have affected his case. We note that defendant could have argued that the fact that his DNA was found on the complainant's circumoral swabs did not tend to show that he had sexually assaulted her, without benefit of an expert's testimony.[1]

Considering all the circumstances, the trial court did not abuse its discretion by denying defendant's request. See *id*.

Finally, defendant argues that trial counsel was ineffective for failing to "assist" with his motion for state funds, citing *People v Ackley*, 497 Mich 381, 870 NW2d 858 (2015). In *Ackley*, the defendant was convicted of first-degree murder and first-degree child abuse after his girlfriend's three year-old daughter died while in his care. *Id*. at 384. Because there was no eyewitness testimony or any other form of direct evidence, "expert testimony was the cornerstone of the prosecution's case," and the prosecutor presented five medical expert witnesses. *Id*. The defendant's counsel stated that he had consulted just one medical witness, who told him that he was not the right person to assist in the defense. *Id*. at 385. The Michigan Supreme Court concluded that defense counsel was ineffective for failing to secure an expert "who could meaningfully assist him in advancing his theory of defense and in countering the prosecution's theory of guilt," particularly "[g]iven the centrality of expert testimony to the prosecution's proofs and the highly contested nature of the underlying medical issue [Shaken Baby Syndrome]." *Id.* at 393-394.

---

[1] We note that the DNA analysis from the underwear was not as conclusive as the analysis from the circumoral swab, but it nonetheless revealed that the DNA from the underwear was much more likely to have come from defendant or someone blood-related to him than from a random person.

*Ackley* is not applicable to the instant case. The scientific evidence in the instant case was not "highly contested," nor was there any scientific controversy surrounding this evidence comparable to that surrounding Shaken Baby Syndrome. See *id*. at 394. Defendant has not suggested that the use of DNA testing for identification is controversial, and although he asserts that the results obtained through YSTR DNA testing on the underwear were not conclusive because such results are not "unique," defendant has not cited any evidence that indicates that this method of testing is not scientifically reliable. Moreover, unlike in *Ackley*, the prosecution's theory of guilt in the instant case did not rely entirely on the scientific evidence. In addition to the DNA evidence, the prosecution presented ample testimony from several witnesses, including the complainant and the nurse who performed the SANE examination. Thus, because the scientific evidence was not central to the case, nor was it particularly controversial, defendant has not shown that trial counsel was ineffective for failing to "assist" with his motion for expert funds pursuant to *Ackley*.

Affirmed.


/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Michael J. Kelly