# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

RAY DANIEL ROLAND,

      Defendant-Appellant.

UNPUBLISHED
March 15, 2018

No. 334938
Macomb Circuit Court
LC No. 2016-000553-FH

Before: MURRAY, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree criminal sexual conduct, MCL 750.520c(1)(c), and first-degree home invasion, MCL 750.110a(2). Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to concurrent sentences of 10 to 40 years' imprisonment for the second-degree criminal sexual conduct conviction, and 22 to 40 years' imprisonment for the first-degree home invasion conviction. We affirm.

According to the evidence, defendant kicked in the door to the victim's motel room where she was living, demanded that she turn "porn" on her television, threatened the victim with a screwdriver, and then sexually assaulted her.

On appeal, defendant argues that the evidence presented to establish the element of "entry without permission" was insufficient to convict him of first-degree home invasion. We disagree.

"A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). "All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). It is the role of the trier of fact to determine the weight of the evidence and the credibility of the witnesses. *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

MCL 750.110a(2) defines the offense of first-degree home invasion:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

First-degree home invasion has "alternative elements" and, thus, it "can be committed in several different ways." *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). To establish first-degree home invasion, the prosecution must demonstrate that the defendant (1) "breaks and enters a dwelling" *or* "enters a dwelling without permission," (2) "intends when entering to commit a felony, larceny, or assault in the dwelling" *or* "at any time while entering, present in, or exiting the dwelling commits a felony, larceny, or assault," and (3) "is armed with a dangerous weapon" *or* "[a]nother person is lawfully present in the dwelling." *Id*., citing MCL 750.110a(2).

Here, defendant only challenges the first element, specifically, whether he entered the victim's motel room "without permission." MCL 750.110a(1)(c) defines "without permission" as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." And the victim expressly testified that she did not give defendant permission to enter her motel room. Further, the victim testified that before defendant entered her room without her permission, she had previously declined to let him inside because she did not "have guys in [her] room when [her] fiancée [was] not home." Although defendant testified that he had been in and out of the victim's room throughout the night, and that he was given permission to enter the final time before the events of this evening began, it was for the jury to determine whether defendant entered the victim's room "without permission." Viewing the evidence in the light most favorable to the prosecution, given the victim's testimony, a reasonable jury could conclude beyond a reasonable doubt that defendant entered the victim's room "without permission." Therefore, the evidence presented was sufficient to support defendant's conviction for first-degree home invasion.

Defendant argues, however, that the evidence presented does not demonstrate that the door to the victim's room was kicked in. But it is immaterial whether the evidence presented demonstrates that the door was kicked in because defendant was charged with entering without permission, not breaking and entering. See MCL 750.110a(2) (defining elements of home invasion); *Wilder*, 485 Mich at 43 (explaining alternative nature of elements of first-degree home invasion).

Defendant next argues that the trial court erred when it overruled his objection to the use of his prior federal bank robbery conviction for impeachment under MRE 609. We disagree.

An evidentiary ruling is reviewed for an abuse of discretion, which occurs when the trial court chooses an outcome outside the range of reasonable and principled outcomes. *People v Green*, 313 Mich App 526, 531; 884 NW2d 838 (2015) (citation omitted). The "trial court's decision on a close evidentiary question . . . ordinarily cannot be an abuse of discretion." *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000). And reversal is only warranted if, after considering the weight and strength of the untainted evidence, it appears that the error was prejudicial, i.e., it undermined the reliability of the verdict. *People v Snyder (After Remand)*, 301 Mich App 99, 111-112; 835 NW2d 608 (2013) (citation omitted).

The relevant portions of MRE 609 state:

**(a) General Rule**. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

> (1) the crime contained an element of dishonesty or false statement, or

> (2) the crime contained an element of theft, and

>> (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

>> (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

**(b) Determining Probative Value and Prejudicial Effect**. For purposes of the probative value determination required by subrule (a)(2)(B), the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity. If a determination of prejudicial effect is required, the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify. The court must articulate, on the record, the analysis of each factor.

"Where a prosecutor would have the option of impeaching the defendant with a prior conviction, the defendant may not mitigate the damage by fronting the conviction and then argue on appeal that admission of the testimony was error." *People v Rodgers*, 248 Mich App 702, 716; 645 NW2d 294 (2001), citing *Ohler v United States*, 529 US 753; 120 S Ct 1851; 146 L Ed 2d 826 (2000). " 'The defendant must choose whether to introduce the conviction on direct examination and remove the sting or to take her chances with the prosecutor's possible elicitation of the conviction on cross-examination.' " *Rodgers*, 248 Mich App at 716, quoting *Ohler*, 529 US at 758. In *Ohler*, the United States Supreme Court determined that the defendant, by testifying about her prior conviction on direct examination, deprived the government of its right to choose whether to actually use the conviction against the defendant. *Id*. "[A] defendant who

preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error." *Id.* at 760.

Defendant has waived this claim because the record demonstrates that he testified about his prior conviction during his direct examination rather than on cross-examination. On direct examination, defendant—in discussing a conversation that occurred between himself, the victim, and Allison Jones, defendant's girlfriend at the time—testified that, "we had told [the victim] that I was on supervised release from the Feds, I robbed banks. . . ." Defendant's preemptive introduction of his prior conviction during his direct examination rather than on cross-examination renders his claim of error on appeal waived. Because the issue is waived, there is no "error" to review. See *People v Carter*, 462 Mich 206, 219; 612 NW2d 144 (2000). But even if defendant had not waived this issue, he has failed to demonstrate that the trial court's purported error undermined the reliability of the verdict. See *Snyder*, 301 Mich App at 111-112.

Next, defendant argues that the trial court abused its discretion when it assessed 15 points for OV 8 because the record did not support the allegation that defendant "asported a victim to another place of greater danger." Defendant's argument is without merit.

"Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *Id.* (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the applications of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

OV 8 addresses victim asportation or captivity. MCL 777.38(1). Under OV 8, the trial court must assess points to the situation, with the highest number of points, applicable to the offense. *Id.* The trial court must assess 15 points for OV 8 where "[a] victim was asported to another place of greater danger or to a situation of greater danger *or* was held captive beyond the time necessary to commit the offense[.]" MCL 777.38(1)(a) (emphasis added). On the other hand, the trial court must assess zero points where "[n]o victim was asported or held captive[.]" MCL 777.38(1)(b). " 'A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken a preliminary examination or trial.' " *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012), quoting *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993).

Defendant argues that the record does not support a finding that the victim was "asported to a place of greater danger." Defendant's argument is misplaced because the trial court did not score OV 8 on the basis of asportation. Rather, the trial court scored OV 8 based on the victim being held captive beyond the time necessary to commit the first-degree home invasion. The trial court provided the following facts to support its assessment of 15 points for OV 8:

> Here, during the offense of home invasion, defendant remained in the complaining witness's hotel room and my notes from the trial indicate that he

-4-

came in the room, she said no, he pulled the screwdriver out of his pocket, he went to the TV, she tried to dial 911, he threw the phone under the bed, he said lift up your shirt, she tried to get up and he tackled her, still had the screwdriver in his right hand. He was threatening, very scarey [sic]. She was begging please don't hurt me out loud, he touched her breast, put his mouth on her breast. She was afraid he would stab her. He laid [sic] on top of her, tried to kiss her and had his hand over her mouth and she kept screaming. Under those circumstances I do find that there [are] facts that support the fact that she was held captive beyond the time necessary to commit the offense of home invasion in the first degree. So I believe OV 8 should be scored 15 points on the home invasion charge.

The trial court's finding that the victim "was held captive beyond the time necessary to commit the offense" was not clearly erroneous because of the abundant evidence that defendant held the victim beyond the time necessary to commit the offense of first-degree home invasion. Defendant entered the victim's motel room without permission and prevented her from leaving the room by threatening her with a screwdriver, thereby holding her captive. Defendant further prevented the victim from running by tackling her to the ground. Defendant also forced the victim to lie on the bed, got on top of her, held her hands down, and forced her to kiss him. Under these circumstances, the evidence supports a score of 15 points for OV 8.

Defendant also argues that "[t]he record does not reflect that the complainant was held captive beyond the time necessary to commit the offense" because, "[w]hen the police arrived, the complainant answered the door." Defendant's assertion is without merit. Defendant's own trial testimony contradicts his argument on appeal. Defendant testified that when he and the victim heard a knock at the victim's door, the victim told defendant to answer it. Defendant further testified that he opened the door. Moreover, defendant's testimony is supported by Clinton Township Police Department Officer Steven Wietecha's testimony that defendant opened the door.

Defendant next argues that trial counsel was ineffective for waiving an adjournment to procure civilian clothing for a defense witness who wore jail clothing. We disagree. Because defendant neither requested a new trial nor an evidentiary hearing in the trial court, this issue is unpreserved and our review is limited to mistakes on the existing record. *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013).

"To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). However, such performance must be evaluated without the benefit of hindsight, *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995), and the defendant must overcome a strong presumption that counsel's actions were based on reasonable trial strategy, *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

A defendant has a due process right to attend trial dressed in civilian clothing. *People v Harris*, 201 Mich App 147, 151; 505 NW2d 889 (1993); *People v Lee*, 133 Mich App 299, 300-

301; 349 NW2d 164 (1984). The United States Supreme Court has recognized that when a defendant is required to wear prison clothing, it violates his presumption of innocence with the jury, violates equal protection because it "operates usually against only those who cannot post bail prior to trial," and furthers no essential state policy. *Estelle v Williams*, 425 US 501, 503-506; 96 S Ct 1691; 48 L Ed 2d 126 (1976). This Court has found that due process is satisfied if a defendant wears jail clothing resembling civilian clothing. *Harris*, 201 Mich App at 151-152. That said, these factors do not apply when a defense witness, other than a defendant, testifies. See, e.g., *People v Banks*, 249 Mich App 247, 259-260; 642 NW2d 351 (2002) ("[W]e do not believe that the handcuffing or shackling of a defense witness also adversely and unfairly affects a criminal defendant's presumption of innocence, thereby undermining the fairness and impartiality of the trial.").

Trial counsel informed the trial court that Jones was "locked up on the 5th in Macomb County Jail" and that she would likely "be wearing [a] jail outfit." After Jones testified, the trial court made the following record:

> *Trial Court*: I do want to place on the record that our last witness Allison Jones, we found - - found out today before we started that she was in the Macomb County Jail so we did have her brought over during lunch time and I think Mr. Mehanna had an opportunity to speak with her then. And when she came in to testify today, she did have Macomb County Jail clothes on, but prior to bringing her in to testify, [we] did have a discussion at the bench and both counsel agreed to go ahead in fashion; is that accurate[]?

> *Prosecutor*: Yes, your Honor. I do recall and we had that conversation at length. Your Honor provided the opportunity if Mr. Mehanna would like to adjourn until morning to do something else to try and get female clothing. I think your Honor also suggested we have male clothing available for small size for that, and I believe Mr. Mehanna's position was that her appearance would not impact the credibility of the testimony.

> *Trial Counsel*: Well, Judge, in light of the fact that she has no other clothing here. She was brought over in her jail clothes. We don't have any female clothing. There's only male clothing. I don't think if they'll fit her or not and, yes, I don't want to adjourn this trial. We want to go with her testimony.

Trial counsel's actions did not fall below an objective standard of reasonableness. See *Solloway*, 316 Mich App at 188. The prosecutor acknowledged defense counsel's agreement that Jones's appearance would not impact her credibility. Defense counsel's decision not to adjourn the trial to obtain civilian clothes for Jones constituted reasonable trial strategy because defense counsel did not believe it would affect Jones's credibility and may have been an attempt to elicit sympathy from the jury. Further, although the trial court stated that Jones was wearing Macomb County Jail attire, the record is devoid of any indication that the clothing was identifiable as such. See *People v Rose*, 289 Mich App 499, 517-518; 808 NW2d 301 (2010) (recognizing the holding of *Estelle*, 425 US at 504-505, that "it violates a defendant's due process right to a fair trial to compel a defendant to wear *identifiable* prison garb during trial") (emphasis added). There is no description of the attire that Jones wore when she testified, other

than that it was issued to her upon her entrance to the Macomb County Jail. And the United States Supreme Court has recognized that, with respect to identifiable jail attire, "the particular evil proscribed is *compelling* a defendant, against his will, to be tried in jail attire." *Estelle*, 425 US at 507 (emphasis added). "The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Id*. at 507-508. Considering the rationale in *Estelle*, defendant has failed to overcome the presumption that trial counsel's decision to forego an adjournment and proceed with Jones dressed in jail attire constituted sound trial strategy utilized in the hope of eliciting sympathy from the jury. *Id*.; *Solloway*, 316 Mich App at 188. Further, because this Court's review is limited to the existing record, and there is no further indication of trial counsel's reasoning behind his position on this issue, trial counsel's actions did not fall below an objective standard of reasonableness.

Defendant also argues that he was prejudiced by trial counsel's decision to waive an adjournment to obtain civilian clothes for Jones because her testimony would have been more credible than, and would have impeached, the victim's testimony. We disagree.

The crucial aspect of Jones's testimony to defendant's case was her claim that, after defendant was arrested, the victim came to Jones's motel room door and said, "Sorry, Hun. I did what I had to do. My man was coming home." Besides the fact that the victim denied having said this, Detective Stephen Rupkus testified that Jones did not tell him that the victim said this to her when he questioned her about the incident. Therefore, even if trial counsel's actions fell below an objective standard of reasonableness, the jury was free to conclude that the testimony of Detective Rupkus substantiated the victim's testimony and cast doubt on Jones's testimony so much so that Jones's appearance in jail attire was harmless. Further, the intended effect of Jones's testimony was to cast doubt on the victim's account of defendant entering the victim's room and assaulting her. However, the testimony of the victim's neighbor, who "heard the door crash," heard the victim screaming, and called 911 twice, also corroborated the victim's testimony that defendant kicked in her door and assaulted her. Even if the appearance of Jones in jail attire resulted in the jury viewing her testimony in a less favorable light than that of the victim's, the testimony of the victim's neighbor and Detective Rupkus was sufficient to render any such error harmless. Therefore, defendant was not prejudiced by trial counsel's waiver of the adjournment.

Affirmed.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood