# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KANIECA ENYETTA CHAPMAN,

Defendant-Appellant.

UNPUBLISHED
August 14, 2018

No.  339085
Wayne Circuit Court
LC No.  16-005886-01-FH

Before:  SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right her jury conviction for aggravated assault, MCL 750.81a(1), for which she was sentenced to two years' probation, with 120 days to be served in jail.  We affirm.

## I.  FACTUAL BACKGROUND

The victim, Jordan Lucas, shares a child with defendant's boyfriend, David Brown.  On the evening of the incident, Lucas was at Brown's apartment after they had spent the day at a pool party together with their seven-month-old child.  Lucas and Brown were discussing whether their child would stay with Brown that evening when defendant arrived at the apartment. Defendant expressed that the child could not stay at Brown's apartment because another child, who had been staying with Brown, was sick with a contagious illness.  Brown and defendant said they would take the child elsewhere, but Lucas did not want her child to go with defendant, apparently because she did not trust defendant.  Lucas then began "exchanging words" with Brown and defendant about whether the child would go with them, with Lucas stating that her child was not going with them and Brown stating that he was.  It is at this point that the testimony of the parties diverged.

According to Lucas, Brown grabbed the child, who was in his car seat, and he and defendant started walking down the stairs of the apartment building to the parking lot.  Lucas followed, continuing to protest that they were not taking her child.  Once in the parking lot, as Brown was walking towards defendant's vehicle, Lucas tried to grab for her child, when defendant turned around, swung her arm, and hit Lucas in the face with her hand, knocking her unconscious.  When Lucas regained consciousness, she was in the parking lot alone and defendant and Brown, along with her child, were gone.  She had injuries all over the side of her face and no one was in the parking lot to assist her.

-1-

Lucas began to panic because she did not know the whereabouts of her child. She called her mother and J.T., the father of her older child, and told them that she had been knocked out, and she did not know where her child was. During the call to her mother Lucas was "hysterical" and stated that she did not know who knocked her out. Lucas did not call 911. J.T. picked Lucas up from the parking lot and took her to his house, where she met her mother, who observed that Lucas's eye was swollen completely shut, bleeding and bruised, and her lip was cut. Lucas told her mother that Brown and defendant took her child, and she then "continuously" called Brown and defendant to try to find the child. At some point, Lucas was informed that her child was at Brown's sister's house, and, with the assistance of a police escort, Lucas got her child from Brown's sister.

Defendant denied punching Lucas. She testified that, while at the apartment, she and Lucas disagreed about whether the child would stay at Brown's apartment, but it was not loud and Lucas was not upset. According to defendant, Lucas insisted that Brown and defendant keep the child and was ultimately "okay" with the child going to another place, so Brown took the child to the parking lot and put him in defendant's car. Defendant and Brown left while Lucas got into her car and left, following them. Defendant drove to Brown's sister's house, dropped Brown and the child off, and left. Defendant then went to her sister's house. Defendant did not see Lucas again that day, but Lucas called her a lot asking where her child was.

Brown, a defense witness, generally corroborated defendant's account, testifying that he did not observe an altercation, or any problems, between defendant and Lucas when he and defendant left the apartment complex with his child. Additionally, he testified that Lucas arrived 15 minutes after defendant dropped him and his child off at his sister's house and demanded that Brown give her the child. He refused because he was supposed to be watching the child and Lucas was "drunk," after which she left. Brown did not notice any injuries to Lucas's face at this time. Later, according to Brown, the police came to his sister's house to get the child.

Hours after the incident, Lucas went to the emergency room for treatment of her injuries. She suffered a broken orbital bone, a black eye, a "busted" lip, a concussion, short-term memory loss, and a cut near her eye requiring stiches. Lucas told hospital personnel that she was hit in the face and knocked out but did not indicate who hit her. Two days later, she filed a police report, indicating that defendant was the individual who had hit her. Defendant was charged with assault with intent to do great bodily harm less than murder, MCL 750.84(1), and aggravated assault, MCL 750.81a(1).

At trial, the court allowed the admission of evidence under MRE 404(b) of a prior bad act involving defendant and Lucas to prove defendant's motive and intent. That evidence established that, two months earlier, Lucas was with Brown sleeping in his apartment with their infant son when defendant arrived around 2:30 a.m., yelling and screaming, and Brown would not let her in. Defendant, who was mad that Brown was with Lucas and that he would not let her in, then proceeded to "bust out" the windows of Lucas's car and throw an object through the second-story window of Brown's apartment. Defendant was convicted of malicious destruction of property stemming from this incident.

The jury ultimately convicted defendant of aggravated assault, MCL 750.81a(1), and this appeal followed.

-2-

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts several instances of ineffective assistance of counsel, none of which warrants appellate relief. "To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). However, such performance must be evaluated without the benefit of hindsight, *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995), and the defendant must overcome a strong presumption that counsel's actions were based on reasonable trial strategy, *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). Because an evidentiary hearing was not held in the trial court our review is limited to mistakes on the existing record. See *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013).

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy, as is a decision concerning what evidence to highlight during closing argument." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (internal citations omitted). "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "We will not second-guess counsel on matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight." *Horn*, 279 Mich App at 39.

Defendant first claims that defense counsel rendered ineffective assistance when counsel failed to elicit testimony that the parking lot of the apartment complex, the scene of the alleged assault, was located very near, within seeing distance of, a swimming pool that is typically occupied at the time of the alleged incident. She asserts that such testimony would have shown that there likely would have been witnesses to the incident, had it actually occurred as Lucas claimed, and the absence of the testimony prejudiced her defense. We disagree.

Defendant supported this claim with her affidavit, in which she stated that she told defense counsel about the parking lot's location near a swimming pool where there are people outside all the time who would have seen the assault. However, because an evidentiary hearing was not held regarding counsel's alleged ineffectiveness, our review is limited to errors apparent on the record, and thus, we do not consider defendant's affidavit, without which there is no factual support for this claim. See *Horn*, 279 Mich App at 38. It is not apparent on the existing record that defense counsel was ineffective in this regard. Defendant does not assert that there were any actual witnesses in the vicinity of the swimming pool or the parking lot at the time of the alleged assault who would have testified favorably for the defense, and it is not apparent that there were any witnesses to the incident. Further, defense counsel argued in closing that neighbors likely would have witnessed the alleged assault if, in fact, it had occurred in the parking lot of the apartment complex as Lucas claimed, yet no witnesses were produced. While testimony that the parking lot was located near a swimming pool, where people would likely be congregating, might have bolstered this argument, without any evidence that such witnesses actually existed, defendant cannot demonstrate a reasonable probability of acquittal had defense counsel elicited such testimony. See *Solloway*, 316 Mich App at 188.

Defendant further asserts that defense counsel rendered ineffective assistance when counsel failed to elicit testimony that Lucas was intoxicated, that she followed defendant and Brown in her car when they left the apartment complex onto the freeway, and then hit their car with her car. We disagree.

Initially, contrary to defendant's assertion, the record reveals that testimony was, in fact, elicited that Lucas had been drinking alcohol and/or smoking marijuana earlier in the evening at a pool party. Testimony was also elicited that Lucas followed defendant's car when defendant and Brown left the parking lot of the apartment complex, which tends to counter Lucas's testimony that she was knocked out in the parking lot. As defendant asserts, while defense counsel did not elicit testimony that Lucas followed Brown and defendant onto the I-96 freeway and hit their car with her car, there is no factual support on the existing record for this assertion. Defendant supported this claim with her affidavit, in which she stated that she told this fact to defense counsel, but an evidentiary hearing was not held, and our review is therefore limited to errors apparent on the record. Thus, we do not consider defendant's affidavit, and there is no factual support for this claim. See *Horn*, 279 Mich App at 38.

Nevertheless, this claim of ineffective assistance fails. Defendant did not assert how her case was prejudiced by the absence of testimony that Lucas followed defendant and Brown onto the freeway and hit their car. And, on the existing record, she cannot establish a reasonable probability that such testimony would have affected the outcome of the trial. See *Solloway*, 316 Mich App at 188. Nor is it apparent that defense counsel's failure to elicit such testimony fell below an objective standard of reasonableness. See *id*. Because testimony that Lucas followed defendant's car and hit it after leaving the parking lot would tend to contradict defendant and Brown's testimony that they all left the parking lot without incident, and there were no altercations or problems between defendant and Lucas in the parking lot, counsel's failure to elicit the testimony was not unreasonable. Moreover, a decision regarding what evidence to highlight is presumed to be a matter of trial strategy, and we will not second-guess counsel on matters of trial strategy or evaluate counsel's performance with the benefit of hindsight. *Horn*, 279 Mich App at 39.

Defendant next claims that defense counsel rendered ineffective assistance when she failed to adequately cross-examine Lucas or present argument concerning the inconsistencies in Lucas's statements and testimony regarding the timing of the alleged assault. Defendant argues that, had counsel highlighted these inconsistencies, it likely would have affected the jury's estimation of Lucas's credibility and the outcome of the trial. We disagree.

While it is apparent from the record that there were inconsistencies among Lucas's statements and testimony regarding the timing of the alleged assault, defense counsel's failure to cross-examine Lucas regarding these inconsistencies or to feature them in closing argument did not constitute ineffective assistance of counsel. The record reveals that defense counsel was able to effectively attack the credibility of Lucas's testimony by means other than highlighting

Lucas's apparent inability to recall the precise timing of the assault.[1] Accordingly, counsel's performance in focusing on these other relevant facts, instead of the inconsistencies regarding the timing of the assault, was not objectively unreasonable. Lucas's head injury, which caused short-term memory loss, and her panic surrounding her missing child, provided a reasonable explanation, unrelated to her credibility, for the inconsistencies, and the testimony of the witnesses was generally consistent regarding the timing of the assault. Further, there is no dispute that defendant was at the parking lot at the same time as Lucas on the evening of the alleged assault. A decision regarding what evidence to highlight is presumed to be a matter of trial strategy, and we will not second-guess counsel on matters of trial strategy or evaluate counsel's performance with the benefit of hindsight. *Horn*, 279 Mich App at 39. Additionally, under these circumstances, defendant has not demonstrated a reasonable probability that she would have been acquitted if counsel had highlighted the inconsistencies in Lucas's testimony and statements regarding the timing of the alleged assault. See *Solloway*, 316 Mich App at 188.

Defendant next claims that defense counsel rendered ineffective assistance when counsel failed to obtain records of defendant's call data for the time period before 7:00 p.m. and retain an expert to map her location based on the call data, which would have revealed that she was not at Brown's apartment at the time of the alleged assault. We disagree. Although defendant asserts that call and location data would have established that she was not at the apartment complex at the time of the alleged assault, which she asserts occurred between 6:30 and 9:00 p.m., there is no evidence that the call data would have revealed this fact.[2] Defendant carries the burden of establishing the factual predicate for her claim and she has failed to do so. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Accordingly, this claim fails.

But even if such call and location data existed showing that defendant was not at the apartment complex between 6:30 and 9:00 p.m., defendant has not shown a reasonable probability that, but for the failure to obtain the earlier call data and retain an expert to testify on her behalf regarding her location between 6:30 and 9:00 p.m., the result of the trial would have been different. See *Solloway*, 316 Mich App at 188. There is no question that defendant was at the apartment complex on the evening of the assault at the same time as Lucas, and the testimony

---

[1] Specifically, counsel emphasized, during questioning and argument, that Lucas never told medical personnel the name of her attacker, never called 911, did not make a police report on the night of the incident—even though she went to two police stations and the hospital—and did not file a police report until two days after the incident. Counsel also emphasized that Lucas stated she did not know who knocked her out in her phone call to her mother immediately following the alleged assault, and there was a large span of time between the alleged assault and when Lucas sought medical treatment. Further, counsel called Brown, who corroborated defendant's testimony that she did not assault Lucas in the parking lot.

[2] In her affidavit, defendant states that call data and location data would have shown that she was not at the apartment complex at the time of the alleged incident, but she did not submit any records to support her statement. Regardless, because an evidentiary hearing on the issue of ineffective assistance was not held, this Court's review is limited to the existing record and her affidavit cannot be considered. See *Horn*, 279 Mich App at 38.

of the witnesses, including that of defendant and Brown, was generally consistent that both defendant and Lucas were at the apartment complex at a time earlier than, or around, 6:30 p.m., consistent with the testimony regarding the timing of the alleged assault. Thus, on the existing record, defendant has not established a reasonable probability that the call data, possibly revealing that defendant was not at the apartment complex between 6:30 and 9:00 p.m., would have resulted in a different outcome. See *id*.

Defendant also claims that defense counsel failed to argue that the call data does not show that Lucas sent text messages to defendant to counter Lucas's testimony that she sent text messages to defendant accusing her of kidnapping and asking for her child. While it is not apparent from the call data that Lucas sent text messages to defendant, there is no dispute that Lucas, as defendant testified, contacted defendant, via texts and phone calls, asking her where her child was; thus, defendant has not shown a reasonable probability that the outcome of the trial would have been different had counsel highlighted that the call data did not show that Lucas sent text messages to defendant. See *id*. Considering the timeline attested to by the witnesses, it is possible that the text messages could have been sent earlier than 7:00 p.m., the starting time of the call data obtained by defendant. Accordingly, this claim fails.

Lastly, defendant asserts that these alleged errors, considered cumulatively, establish that defense counsel's performance fell below an objective standard of reasonableness and that the result of the trial would have been different but for the errors. Because defendant failed to establish any instances of ineffective assistance of counsel, this argument is without merit.

Finally, we decline to reconsider defendant's request to remand for an evidentiary hearing. Defendant previously filed a motion with this Court to remand for an evidentiary hearing on the issue of defense counsel's ineffective assistance under MCR 7.211(C)(1)(a), which this Court denied.[3] None of the alleged instances of ineffective assistance, as discussed, require further development of the record to determine whether defense counsel was ineffective. See *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

## III. OTHER-ACTS EVIDENCE

Defendant next claims that she was denied a fair trial by the trial court's admission of evidence of her prior bad act. Defendant contends that the evidence had no relevant purpose, except to show her character or propensity towards violence, and was unfairly prejudicial. We disagree. "A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion." *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo." *Id*. "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007).

---

[3] *People v Chapman*, unpublished order of the Court of Appeals, entered October 26, 2017 (Docket No. 339085).

"MRE 404 governs the admissibility of other-acts evidence." *Denson*, 500 Mich at 397. "The general rule under MRE 404(b) is that evidence of other crimes, wrongs, or acts is inadmissible to prove a propensity to commit such acts." *Id.* However, other-acts evidence may be admissible under MRE 404(b) for other non-character purposes.[4] *Id.* Under MRE 404(b), relevant other-acts evidence is generally admissible unless "the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question[.]" *People v VanderVliet*, 444 Mich 52, 63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). The pertinent question is "whether the evidence [is] in any way relevant to a fact in issue other than by showing mere propensity." *Id.* at 64 (internal quotation marks and citation omitted). Thus, "[r]elevant other acts evidence does not violate Rule 404(b) unless it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith." *Id.* at 65.

In *VanderVliet*, 444 Mich at 55, our Supreme Court articulated the following four-part test for determining the admissibility of other-acts evidence under MRE 404(b):

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

Here, the trial court properly admitted evidence of defendant's prior bad act to show her motive and intent. See MRE 404(b)(1). Defendant was charged with assault with intent to do great bodily harm, MCL 750.84(1), and aggravated assault, MCL 750.81a(1), stemming from the incident during which she allegedly struck Lucas in the face. She denied committing the assault and argued that Lucas was framing her for the crime. She also argued before trial that the evidence, i.e., one punch to Lucas's eye, failed to establish that defendant had the requisite intent to do great bodily harm, a required element of the charged assault. See *People v Lugo*, 214 Mich App 699, 710; 542 NW2d 921 (1995). The prosecution, on the other hand, argued that defendant committed the assault and acted with the requisite intent to harm Lucas. The prosecution sought to admit evidence of defendant's prior act that occurred only two months earlier, during which she acted violently and aggressively towards Lucas after defendant arrived at the apartment of her boyfriend, David Brown, where Lucas and Brown, with their infant son, were sleeping.

---

[4] MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in this case.

Specifically, when Brown would not let defendant in, she proceeded to "bust out" the windows of Lucas's car and then throw an object through the second-story window of Brown's apartment. The prosecution claimed that this evidence was offered to establish defendant's motive to commit the instant assault and her intent to harm Lucas. Specifically, the prosecution asserted that evidence of defendant's prior bad act against Lucas shows that "the defendant has a problem with this victim, that she intended to cause her great bodily harm when she hit her this time."

MRE 404(b) expressly provides that "[e]vidence of other acts may be admitted to show proof of motive, opportunity, or intent." *People v Seals*, 285 Mich App 1, 11; 776 NW2d 314 (2009). Thus, the prosecution identified a proper use for admitting the other-acts evidence, other than to show defendant's propensity for violent or assaultive behavior, i.e., to establish defendant's motive or reason for committing the instant assault by showing that she had an animus towards this particular victim, apparently because of her involvement with defendant's boyfriend, and to establish her intent to harm Lucas. See *VanderVliet*, 444 Mich at 63, 74. Thus, the prior bad act was offered for a proper purpose under MRE 404(b), thereby satisfying the first prong of the *VanderVliet* test.

Additionally, the other-acts evidence was logically relevant to issues or facts of consequence at trial. See *Denson*, 500 Mich at 400-402; *VanderVliet*, 444 Mich at 55, 74. "Relevant evidence . . . is evidence that is material (related to any fact that is of consequence to the action) and has probative force (any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence)." *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000). In the context of other acts, the evidence " 'truly must be probative of something *other* than the defendant's propensity to commit the crime.' " *Denson*, 500 Mich at 402, quoting *People v Crawford*, 458 Mich 376, 390; 582 NW2d 785 (1998). The prosecution must not rely on "the impermissible inference that defendant had committed the charged offense because of [her] supposed violent character." *Denson*, 500 Mich at 408. "The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." *VanderVliet*, 444 Mich at 75.

Here, defendant's theory of her defense was that she did not commit the assault and the victim was framing her for the crime. Additionally, because defendant was charged with assault with intent to commit great bodily harm less than murder, MCL 750.84(1), a relevant issue at trial was whether defendant specifically intended to commit great bodily harm if she struck the victim, a required element. See *Lugo*, 214 Mich App at 710. Evidence that only two months earlier defendant acted violently towards Lucas, at a time when Lucas was with Brown, shows that defendant harbored strong animus towards Lucas and Lucas's ongoing relationship with Brown, which was probative to both of these critical issues. By providing a reason or motive why defendant would assault this particular victim, the evidence made it more probable that defendant, as opposed to another individual, assaulted Lucas in this case—who again was with Brown—and had the requisite intent to harm Lucas. See *Sabin (After Remand)*, 463 Mich at 68. Thus, contrary to defendant's argument, the other-acts evidence goes beyond establishing that defendant had violent or aggressive propensities that she acted in conformity with because it provided a reason, beyond her character, why she would assault this particular victim. See *Denson*, 500 Mich at 407-408; *People v Hoffman*, 225 Mich App 103, 105-110; 570 NW2d 146 (1997). The evidence also tends to counter defendant's testimony that she liked Lucas and had no problem with her. The other-acts evidence, thus, was logically relevant to an issue or fact of

-8-

consequence at trial, without relying on an impermissible character or propensity inference, thereby satisfying the second prong of the *VanderVliet* test. See *Denson*, 500 Mich at 400-402; *VanderVliet*, 444 Mich at 55.

We disagree with defendant's assertion that the other-acts evidence was inadmissible because there was not a "striking similarity" between her prior act of violence and the charged assault to establish a proper theory of relevance. "The degree of similarity that is required between a defendant's other act and the charged offense depends on the manner in which the prosecution intends to use the other-acts evidence." *Denson*, 500 Mich at 402-403. Here, by showing defendant's animus towards this particular victim, the other-acts evidence was used to prove defendant's motive to commit the assault and her intent to harm Lucas. In this context, defendant's prior violent act against Lucas's property was sufficiently similar to the charged offense of assault of Lucas's person because, significantly, both acts involved the same victim and presented similar circumstances as they both occurred when Lucas was with defendant's boyfriend. The other-acts evidence, thus, was of the same general category, i.e., defendant's violent and aggressive conduct towards this particular victim. See *VanderVliet*, 444 Mich at 79-80.

Finally, the probative value of the other-acts evidence was not substantially outweighed by its potential for unfair prejudice, thereby satisfying the third prong of the *VanderVliet* test. See *id*. at 55, 74-75. The other-acts evidence had substantial probative value with respect to the relevant issues of motive and intent because it made it more probable that defendant committed the assault and intended to harm Lucas based, not on her criminal propensity, but on her animus towards this particular victim and Lucas's ongoing relationship with defendant's boyfriend. While defendant likely suffered some prejudice from the admission of other-acts evidence, "[a]ll relevant evidence is prejudicial; only *unfairly* prejudicial evidence may be excluded." *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011). Here, the evidence was not unfairly prejudicial as it was more than marginally probative in light of defendant's theory that she did not commit the assault and Lucas was framing her for the crime, and the prosecution's burden to prove that defendant intended to do great bodily harm to Lucas. Thus, the other-acts evidence was admissible under MRE 403. See *VanderVliet*, 444 Mich at 55, 74-75.

Additionally, the trial court provided the jury with an instruction limiting the use of the evidence for the proper purpose of establishing motive and intent, and further cautioning the jury that the other-acts evidence should not be used to infer that defendant was a bad person or had the propensity to commit crimes, thereby minimizing the danger of any unfair prejudice. See *People v Roscoe*, 303 Mich App 633, 646; 846 NW2d 402 (2014). Jurors are presumed to follow the instructions given by the trial court, *id*., and there is no indication that the jury gave the other-acts evidence undue weight. The trial court did not abuse its discretion in admitting the other-acts evidence under MRE 404(b).

Finally, defendant argues that the trial court never actually ruled that the admission of the other-acts evidence was proper. Because defendant did not raise this issue before the trial court, our review is limited to plain error and defendant failed to demonstrate plain error. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The record indicates that the trial court ruled on the admissibility of the other-acts evidence, determining that the evidence was admissible to show motive and intent and was not more prejudicial than probative. Moreover,

because the trial court properly admitted the other-acts evidence, defendant has not shown that the outcome of the trial was affected by the alleged inadequacy of the court's findings.

Affirmed.


/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly