*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARTIN FREDERICK SMITH II,

Defendant-Appellant.

UNPUBLISHED
December 17, 2019

No. 342509
Lapeer Circuit Court
LC No. 14-011991-FH

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of felonious assault, MCL 750.82, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, torturing of an animal, MCL 750.50b(2), and domestic violence, MCL 750.81(2). The trial court sentenced defendant to concurrent prison terms of 180 days for each of the felonious assault and torturing of an animal convictions, and 90 days for the domestic violence conviction, all to be served consecutively to the statutory 2-year prison term for felony-firearm. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In July 2014, defendant had a domestic dispute with AL, who was then his girlfriend. The two began arguing while attending a fair, and continued arguing when they returned to their home in Dryden Township. AL testified at trial that during the argument, she intentionally bumped defendant's plate of food, causing some food to fall to the floor. Defendant responded by striking AL in the face, causing her head to hit a nearby cabinet. She further testified that defendant grabbed a rifle, asked her where her dogs were, and then walked out the front door of the house with the rifle. AL was concerned about her dogs and followed defendant outside. She stated that as defendant was walking toward where her dogs were "hiding" behind some propane tanks, she jumped on defendant's back, but defendant flung her off and punched her several times in the back of the neck and lower back.

AL testified that defendant fired his rifle several times, shooting in the direction of the dogs. She stated that she tried to take the gun away from him and cut her thumb in the process,

-1-

and that at some point defendant said, "I'm going to kill your dogs." AL testified that after the struggle for the gun, defendant pointed it at her "for a second or two" and that she was afraid.

At around this time, AL saw her dog Phoebe run to defendant and try to jump up at defendant's rifle. AL was not sure what exactly happened, but she heard defendant say, "Your dog is on the ground. Your dog is knocked out." AL saw that Phoebe was lying on the ground, limp and bleeding. AL then picked up the unconscious Phoebe and put her in AL's truck. After also retrieving her other dog, AL took Phoebe to the veterinary hospital. On the way, AL contacted the police. Phoebe regained consciousness in the car and began howling.

Phoebe was treated at the veterinary hospital and was found to have suffered a two-centimeter wound above her right eye. The veterinarian, Dr. Keith Burge, testified that he was unable to determine whether the wound was caused by a gunshot or by blunt force trauma, calling each possibility "equally feasible." But Dr. Burge also opined that a dog typically would not be knocked unconscious as a result of a grazing gunshot wound. AL testified that Phoebe made a complete recovery within a few days.

When defendant spoke to police, he admitted to threatening the dogs and shooting the rifle that night, although he denied shooting at a specific target. He told police that he did not think he had shot Phoebe. When police asked defendant if he had struck AL, he replied that he could not say he did not strike her, but also suggested that AL's injury may have been caused by falling down the stairs.

Before trial, the trial court granted the prosecution's motion to introduce evidence of prior acts of defendant under MRE 404(b). At trial, the prosecution introduced evidence that in 2004, defendant had assaulted another girlfriend, LM. The prosecution also introduced evidence that in 2008, defendant had pointed a gun or rifle at two individuals who were following a hot air balloon and who had parked along Hough Road near defendant's property. After the prosecution rested its case, defendant moved for a directed verdict of acquittal on all counts. The trial court denied the motion.

Defendant's theory of the case at trial was that AL's testimony lacked credibility; she had admitted that she did not have a good memory and had given statements to police that contradicted her trial testimony. Additionally, AL had not told the police when she called them that defendant had pointed a gun at her. Defendant presented witnesses who testified that AL had told them about the incident but had only said that defendant had shot her dog, not that he had assaulted her or pointed a gun at her. Defendant did not testify at trial.

The jury convicted defendant as described.[1] Subsequently, defendant moved the trial court for a new trial on the grounds that the verdict was against the great weight of the evidence and that he had received ineffective assistance of counsel. Defendant specifically asserted that his trial counsel had failed to inform him of plea offers, and had failed to adequately impeach

---

[1] The jury acquitted defendant of a second count of felony-firearm, which pertained to the underlying felony of torturing an animal.

AL's and LM's testimony. The trial court granted defendant a *Ginther*[2] hearing on his ineffective assistance claim. After the hearing, the trial court denied defendant's motion.

This appeal followed. This Court denied defendant's motion to remand to allow his appellate counsel to obtain documents from the *Ginther* hearing, "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar."[3]

## II. GREAT WEIGHT OF EVIDENCE

Defendant argues that he is entitled to a new trial because the jury's verdicts were against the great weight of evidence.[4] We disagree. We review for an abuse of discretion a trial court's decision to deny a motion for a new trial. *People v Lemmon*, 456 Mich 625, 648 n 27; 576 NW2d 129 (1998); see also *People v Cameron*, 291 Mich App 599, 617-618; 806 NW2d 371 (2011); *People v Stiller*, 242 Mich App 38, 49; 617 NW2d 697 (2000). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. [*People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009) (citations omitted).]

"It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *Lemmon*, 456 Mich at 637. Only in "exceptional" circumstances will a court usurp the jury's role in determining witness credibility. *Id*. at 642. Indeed, even "when testimony is in direct conflict and testimony supporting the verdict has been impeached," the credibility determination is for the jury to decide. *Id*. at 643. Only when as a matter of law the impeached testimony was deprived of all probative value or the jury could not believe it, will this Court intervene in determining credibility. *Id*.; see also *Lacalamita*, 286 Mich App at 469-470

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] See *People v Smith*, unpublished order of the Michigan Court of Appeals, entered July 17, 2019 (Docket No. 342509).

[4] Although defendant purports to argue that his conviction for the torturing of an animal was against the great weight of the evidence, the substance of his argument is that no evidence was presented to support the intent element of the crime. We will therefore discuss that claim in Part III of this opinion, as one challenging the sufficiency of the evidence. Accordingly, our discussion of defendant's challenges to the weight of the evidence applies to the jury's verdict on the remaining charges.

("Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial.").

Defendant specifically argues that AL's testimony was so heavily impeached and contradicted that it was deprived of any probative value. We disagree, and therefore hold that the trial court did not abuse its discretion by denying defendant's motion for a new trial.

## A. FELONIOUS ASSAULT AND FELONY-FIREARM CONVICTIONS

Defendant argues that AL lacked credibility when she testified that he had pointed a gun at her, and that her testimony was seriously impeached. In particular, he argues that AL's trial testimony was not consistent with her prior statements.

Defendant notes that while AL was on the way to the veterinary hospital, she spoke with two people on the phone, but did not tell them that defendant had pointed a gun at her. We find this insignificant. The recipients of those calls testified that AL was completely distraught because she thought that Phoebe, who AL described as one of her "babies," had been shot. It is understandable that during these conversations, AL would have been focused on her wounded and bleeding dog, which she was frantically trying to transport to the hospital. Consequently, it cannot be said that her omissions during these phone calls deprived her testimony of all probative value; it was for a jury to decide whether her trial testimony was truthful. See *Lemmon*, 456 Mich at 637, 643.

Defendant also notes that when AL informed the police of the incident, she denied that defendant had pointed a gun at her. AL's prior statement contradicted and therefore impeached her trial testimony. However, as stated, mere contradictory testimony is not deprived of all probative value. *Id*. at 643. The jury was presented with AL's prior statement, as well as her explanation that she initially feared that defendant would be charged with attempted murder if she told the police that he had pointed a gun at her. It was within the jury's province to determine whether her explanation made sense and whether her testimony was credible. See *id*. at 637.

Defendant's convictions of felonious assault and felony-firearm were not against the great weight of the evidence.

## B. DOMESTIC VIOLENCE CONVICTION

Defendant also cursorily argues that his domestic violence conviction was against the great weight of evidence because AL's trial testimony had been heavily impeached. Defendant notes that at various times AL gave differing accounts of what had happened, and that she sometimes changed or omitted key details. To the extent that AL's testimony was impeached by any prior omissions or conflicting statements, her testimony was not deprived of all probative value. Any credibility determinations were for the jury to decide. See *Lemmon*, 456 Mich at 637, 643. Defendant's domestic violence conviction was not against the great weight of the evidence.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that there was insufficient evidence to support his conviction for the torturing of an animal. We disagree. We review de novo a challenge to the sufficiency of the evidence, viewing the evidence in a light most favorable to the prosecution to determine "whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). "All conflicts with regard to the evidence must be resolved in favor of the prosecution. Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005) (citation omitted).

Defendant was convicted of violating MCL 750.50b(2), which provides, in pertinent part:

Except as otherwise provided in this section, a person shall not do any of the following without just cause:

(a) Knowingly kill, torture, mutilate, maim, or disfigure an animal.

(b) Commit a reckless act knowing or having reason to know that the act will cause an animal to be killed, tortured, mutilated, maimed, or disfigured.

Torture of an animal is a general intent crime. *People v Fennell*, 260 Mich App 261, 269; 677 NW2d 66 (2004). Therefore, the prosecution had to prove that defendant (1) committed the act, (2) while knowing it to be wrong, (3) without just cause or excuse, and (4) did it intentionally or with a conscious disregard of known risks to the property of another. *Id*. at 270.

Defendant presents essentially two arguments: (1) that there is no evidence that he intentionally did any act that harmed the dog, and (2) that there is no evidence that the dog was tortured, mutilated, maimed, or disfigured. We disagree.

With regard to his intent, defendant argues that there was no direct evidence that he intentionally struck or shot Phoebe and that the intent element was therefore not proven beyond a reasonable doubt. It is well established that the elements of a crime may be proved with circumstantial evidence and reasonable inferences arising from that evidence. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999); see also *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008) ("[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented."). The prosecution presented circumstantial evidence to allow the jury to infer that defendant had either intentionally shot or struck the dog. AL testified that, while getting his rifle, defendant repeatedly stated in a mocking or sarcastic tone, "Where are your dogs, [AL]?" Then after going outside to where the dogs were, defendant shot his rifle multiple times in the direction of the dogs. After Phoebe approached defendant, AL next saw Phoebe on the ground, bleeding and unconscious, although she did not see defendant strike or shoot the dog. The veterinarian opined that it would be unlikely for a graze wound from a gunshot to knock a dog unconscious, and he could not rule out blunt force trauma as the cause of Phoebe's injury. The evidence, viewed in

the light most favorable to the prosecution, allowed the jury to infer that defendant had intentionally struck the dog with his rifle. *Kanaan*, 278 Mich App at 622.

With regard to whether there was sufficient evidence to prove that defendant killed, tortured, mutilated, maimed, or disfigured the dog, it was undisputed that Phoebe did not die as a result of the wound she suffered; therefore, the "kill" aspect of MCL 750.50b(2) is not applicable. The statute does not define the words "torture, mutilate, maim, or disfigure," but the trial court provided the following definitions:

> Torture means severe physical or mental pain and agony or anguish. Mutilate means to cut off or destroy any essential part. Maim means to disable or disfigure, to be deprived of the use of a limb or bodily manner. And disfigure means to mar or spoil the appearance or shape of an object or of the animal.

Defendant did not object to these definitions in the trial court, and he does not do so on appeal.

AL testified that after she noticed that Phoebe was injured, she picked up the unconscious dog and drove it to the veterinary hospital. She testified that Phoebe regained consciousness in the car and started to howl because she "was in quite a bit of pain." The veterinarian testified that Phoebe suffered a wound above her right eye. The veterinarian agreed that it "probably" was painful for the dog. The evidence allowed the jury to infer that Phoebe was knocked unconscious from defendant's blow and was howling in pain upon awakening. Viewed in a light most favorable to the prosecution, the evidence was sufficient to show that Phoebe suffered "severe" pain and "agony or anguish," as a result of defendant's attack, satisfying the definition of "torture." The evidence supported defendant's conviction under MCL 750.50b(2). *Cline*, 276 Mich App at 642.

## IV. OTHER-ACTS EVIDENCE

Defendant argues that the trial court erred when it allowed the prosecution to present other-acts evidence. He contends that the court should not have admitted evidence related to his prior assault of LM and should not have admitted evidence that he had previously pointed a gun at two individuals in a 2004 incident. We disagree with respect to the prior instance of domestic violence against LM, but agree that the evidence related to the 2004 incident should not have been admitted. Despite the error in admitting that evidence, we hold that defendant is not entitled to a new trial.

This Court reviews for an abuse of discretion a trial court's decision to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). We review de novo preliminary questions of law. *Id*.

### A. 2008 DOMESTIC VIOLENCE INCIDENT

The trial court allowed the admission of evidence showing that, in 2008, defendant had assaulted his then-girlfriend, LM. The prosecutor argued that the evidence was admissible under both MCL 768.27b and MRE 404(b).

MCL 768.27b(1) provides:

Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence[5] or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if not otherwise excluded under [MRE 403].

Notably, the statute that allows evidence of past acts of domestic violence to be used "for any purpose for which it is relevant" permits its use as propensity evidence. *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010); see also *People v Rosa*, 322 Mich App 726, 732; 913 NW2d 392 (2018). Therefore, because the evidence of the 2008 incident involved domestic violence, it meets the threshold requirement of admissibility under MCL 768.27b. But the evidence must also be evaluated under MRE 403, which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

With respect to probative value, evidence of prior acts of domestic violence "can be admitted at trial because 'a full and complete picture of a defendant's history . . . tend[s] to shed light on the likelihood that a given crime was committed.' " *Cameron*, 291 Mich App at 610, quoting *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). Evidence is not "unfairly prejudicial" simply because it is damaging; rather, the term

refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. Moreover, admission of evidence is unfairly prejudicial when . . . the danger exists that marginally probative evidence will be given undue or preemptive weight by the jury. [*Cameron*, 291 Mich App at 611 (quotation marks, citations, and brackets omitted).]

Our Supreme Court has explained that "courts must weigh the propensity inference *in favor of the evidence's probative value* rather than its prejudicial effect." *People v Watkins*, 491

---

[5] At the time of defendant's trial, domestic violence was defined as, *inter alia*, "[c]ausing or attempting to cause physical or mental harm to a family or household member," or "[p]lacing a family or household member in fear of physical or mental harm." MCL 768.27b(5)(a)(*i*) and (*ii*). Further, MCL 768.27b(5)(b)(*iv*) defined "family or household member" as including "[a]n individual with whom the person has or has had a dating relationship." We note that effective March 17, 2019, the statute was amended by 2018 PA 372, but the provisions in Subsection (5) were retained and simply moved to Subsection (6).

Mich 450, 487; 818 NW2d 296 (2012) (emphasis added).[6] However, "[t]his does not mean . . . that other-acts evidence admissible under MCL 768.27a [or MCL 768.27b] may never be excluded under MRE 403 as overly prejudicial." *Watkins*, 491 Mich at 487. In determining whether to exclude evidence under MRE 403, a trial court may properly consider the following nonexhaustive factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488 (citation omitted).]

Apart from stating generally that "there was too much of a danger of the jury giving undue weight to the prior alleged incidents of domestic assault," defendant has not explained how the evidence of the 2008 domestic assault injected any *unfair* prejudice. And none of the *Watkins* factors weigh in favor of disallowing the evidence of the 2008 domestic violence incident. The 2008 act and the act charged in this case are very similar. In both incidents, defendant and his girlfriend were out in public and consuming alcohol when they began to argue; upon returning home, defendant escalated the argument to physical assault. The incidents occurred only five years apart, there was no suggestion of an intervening act, and LM's testimony was reliable, given the photographs that were admitted illustrating her injuries. In short, admission of the 2008 act of domestic violence provided a more complete picture of defendant's history and was relevant to show that he had a propensity to assault his girlfriends, especially after consuming alcohol, and "the prejudicial effect of [the] other-acts evidence did not stir such passion as to divert the jury from rational consideration of [defendant's] guilt or innocence of the charged offenses." *Cameron*, 291 Mich App at 611-612.

Therefore, the trial court did not abuse its discretion by admitting evidence of defendant's domestic assault on LM in 2008. *Lukity*, 460 Mich at 488.

## B. 2004 FIREARM INCIDENT

We do agree with defendant that the evidence of the 2004 incident was erroneously admitted. The 2004 incident did not involve domestic violence, so MCL 768.27b does not apply and MRE 404(b) instead governs the admissibility of that evidence. MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identify,

---

[6] In *Watkins*, the Supreme Court analyzed the interaction between MRE 403 and MCL 768.27a(1), which allows evidence of certain past offenses against a minor to "be considered for its bearing on any matter to which it is relevant."

or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b)(1) "represents the deeply rooted and unwavering principle that other-acts evidence is inadmissible for propensity purposes." *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). The list of permissible purposes in MRE 404(b)(1) is not exhaustive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Indeed, a proper purpose is merely "one that seeks to accomplish something other than the establishment of a defendant's character and his propensity to commit the offense." *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005).

In order for other-acts evidence to be admitted: (1) it must be offered for a proper purpose, i.e., a reason other than to show character or propensity; (2) the evidence must be relevant to that purpose; (3) the evidence's probative value must not be substantially outweighed by the danger of unfair prejudice. *Sabin*, 463 Mich at 55-56.

We conclude that evidence of the 2004 incident was not relevant to the case at hand. Evidence is logically relevant if it is material and has probative value. MRE 401; *Denson*, 500 Mich at 401. Evidence is material if it is related to "any fact that is of consequence" in an action. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998), quoting MRE 401.

In this case, the two witnesses who testified regarding the 2004 incident stated that defendant pointed "a shotgun" or a "gun" out of his vehicle window at them while they were parked near his property. This evidence was at best minimally relevant to whether defendant had intentionally pointed a rifle at AL during a heated, domestic argument that occurred 10 years later. And although the prosecution contended that the evidence "shows [defendant's] scheme/plan/system in using the rifle to threaten/intimidate/assault and otherwise get his own way," the mere fact that defendant pointed a gun at another human being in the past is not, without more, relevant to a proper, non-propensity purpose in determining whether he did so again, in different circumstances, 10 years later. We hold that evidence of the 2004 incident was not relevant to a proper purpose. Accordingly, the trial court abused its discretion when it admitted evidence of the 2004 firearm incident. *Lukity*, 460 Mich at 488.

However, "nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Lukity*, 460 Mich at 495-496, quoting MCL 769.26.

In this case, the untainted evidence against defendant was strong. In addition to the veterinarian's testimony, AL's testimony, and accompanying photographs showing AL's and the dog's injuries, defendant admitted to retrieving his rifle during the argument with AL, threatening her dogs, and shooting his rifle multiple times. Additionally, defendant immediately after the incident was unable to say whether he had struck AL. Upon examination of the entire cause, we cannot conclude that it is more probable than not that the error was outcome-determinative. *Id*. The trial court's erroneous admission of this other-acts evidence was harmless.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied the effective assistance of counsel during pretrial and at trial.  We disagree.

The determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law.  *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  The court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to the effective assistance of counsel.  *Id*.  We review for clear error the trial court's factual findings, while its constitutional determinations are reviewed de novo.  *Id*.  A factual finding is clearly erroneous when the reviewing court is left "with a definite and firm conviction that a mistake has been made."  *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996).

Defendants have the right to the effective assistance of counsel.  *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009).  Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise.  *LeBlanc*, 465 Mich at 578.  Generally, to establish a claim of ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.  *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).  We do not measure defense counsel's performance with the benefit of hindsight.  See *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

## A.  FAILURE TO INFORM OF PLEA OFFERS

Defendant argues that his trial counsel was ineffective in not informing him of any plea offers.  The record shows that the prosecution made a single plea offer, which never changed leading up to trial.  The offer was that defendant would either (1) plead guilty to felonious assault and the attempted killing or torturing of an animal, or (2) plead guilty to felonious assault and misdemeanor cruelty to animals, MCL 750.50(4)(a), in return for the other charges being dropped.

At the *Ginther* hearing, defendant testified that he never discussed any plea offers with his attorney.  Conversely, defendant's trial counsel testified that he did discuss the plea offer with defendant on "many, many occasions," but that defendant did not find the offer acceptable.  Trial counsel explained that defendant's main objective in securing a plea was to be able to continue to own and possess firearms.  Defendant confirmed that he told his trial counsel several times that the most important thing regarding any plea was the ability to retain his gun rights.

After the *Ginther* hearing, the trial court stated:

> First, the defendant asserts that he was denied the opportunity to enter into a plea agreement because his attorney did not inform him of all plea offers or because his attorney assured him he would prevail at trial.  Although the defendant may not remember discussing a plea agreement with his defense counsel, his trial counsel testified at the *Ginther* hearing that he certainly relayed

-10-

the plea offer contained in this court's pretrial scheduling order and discussed it with the defendant. At a minimum, [defense counsel] mailed a letter and a copy of the scheduling order to the defendant at his home address. The defendant confirmed at the *Ginther* hearing that he received other correspondence from his attorney by mail at that address.

This finding by the trial court that, at a minimum, defendant received a copy of the plea agreement contained in the pretrial scheduling order is not clearly erroneous. Therefore, defendant has not established the factual predicate of his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant cannot overcome the presumption of effective assistance. *LeBlanc*, 465 Mich at 578.

Further, the trial court found that defendant was unlikely to have accepted a plea offer that would have required him to plead to a felony and that therefore would have impaired his right to possess firearms. This finding is also not clearly erroneous. "In the context of pleas[,] a defendant must show [that] the outcome of the plea process would have been different with competent advice." *Lafler v Cooper*, 566 US 156, 163; 132 S Ct 1376; 182 L Ed 2d 398 (2012). In this case, defendant made it clear to his trial counsel and to the trial court that he would not accept any plea that hampered his ability to possess firearms, i.e., pleading guilty to any felony, see MCL 750.224f. Either alternative of the prosecution's offer would have required defendant to plead guilty to a felony. Therefore, even assuming that defendant was not aware of the plea offer, it is not reasonably probable that defendant would have accepted it if he had been made aware of it. We conclude that defendant cannot show prejudice. *Trakhtenberg*, 493 Mich at 51.

## B. FAILURE TO IMPEACH LM

At trial, LM testified that defendant had assaulted her by punching her and choking her. In addition, photographs of LM's injuries were admitted into evidence. Defendant appears to contend that if his trial counsel had impeached LM's testimony with evidence that he had only pleaded guilty to the *attempted* assault and battery of LM, it would have thoroughly discredited LM's testimony, which in turn would have resulted in an acquittal of the charged crimes against AL. We find this argument meritless.

First, it is commonly understood that criminal defendants regularly plead guilty to lesser crimes to avoid potential heavier penalties for the crimes they actually committed. See *Santobello v New York*, 404 US 257, 260; 92 S Ct 495; 30 L Ed 2d 427 (1971) ("The disposition of criminal charged by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice."); *People v Reagan*, 395 Mich 306, 313; 235 NW2d 581 (1975) ("The role of the 'bargaining' relationship between the people (and their bargaining agent, the prosecutor) and a defendant charged with crime is now generally recognized."); *People v McMiller*, 389 Mich 425, 438; 208 NW2d 451 (1973) (BRENNAN, J., dissenting) ("The dismissal of higher charges contemporaneously with the entry of pleas to lesser offenses is a daily occurrence. The practice is called plea bargaining. Whatever its shortcomings, plea bargaining is the result of the needs, the desires, and the decisions of practical men on both sides of the adversary criminal process."). Therefore, the mere fact that defendant pleaded guilty to the attempted assault and battery of LM would not necessarily have impeached her testimony that defendant actually assaulted and battered her.

This is especially true when LM's testimony was corroborated by evidence such as defendant's admission to the police that he had "slapped" LM, and photographs detailing LM's injuries. Defendant cannot demonstrate that his counsel's failure to introduce evidence of the specific details of his plea bargain fell below an objective standard of reasonableness or was outcome-determinative. *Trakhtenberg*, 493 Mich at 51.

## C. FAILURE TO IMPEACH AL

Defendant argues that his trial counsel "missed a golden opportunity to impeach [AL]" with information that his counsel could have obtained from a defense witness, Michael Jackson, concerning "her authority with [defendant's] company, the temperament of her dogs, and a prior incident in which she initiated unwanted physical contact with [defendant] with a tomato." Although defendant thus identifies three types of information that he contends defense counsel could have obtained from Jackson, he only puts forth an argument with respect to the prior incident involving a tomato. Accordingly, the other aspects of the argument are abandoned. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he only give cursory treatment with little or no citation of supporting authority.").

At the *Ginther* hearing, Jackson testified that, during lunch at a diner with defendant and AL, he witnessed AL become upset with defendant and try to shove a tomato down defendant's shirt. Jackson said that defendant, in response, grabbed AL's hand to stop her. Jackson described defendant as "a mess" afterward. He testified that defendant walked to the restroom, washed up, and left. Defendant argues that his trial counsel should have elicited this information from Jackson at trial. He contends that this evidence would have shown that defendant "does not escalate when [AL] initiates unwanted physical contact with him" and therefore would have impeached her testimony that he escalated the situation after she knocked food off his plate.

Defendant does not identify under what rule of evidence this testimony would have been admissible. While a criminal defendant has "an absolute right to introduce evidence of his character to prove that he could not have committed the crime," such character evidence can only be presented in the form of reputation testimony. *People v Whitfield*, 425 Mich 116, 130; 388 NW2d 206 (1986), citing MRE 404(a)(1) and MRE 405(a). Therefore, Jackson's recounting of a specific incident that purportedly shows defendant's character is not admissible under the rules of evidence. Consequently, defense counsel's failure to elicit this testimony was eminently reasonable. Indeed, any such attempt would have been futile, and "[f]ailing to advance a meritless argument . . . does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Second, even assuming that the evidence was admissible, it is not reasonably probable that its admission would have altered the outcome of the proceedings. Photographs admitted at trial showed the injuries that AL had sustained. Defendant admitted that he threatened to shoot the dogs and that he fired his rifle multiple times. Further, in his statement to the police, defendant "could not say" that he did not strike AL. In light of this evidence, it is not reasonably probable that the jury would have come to a different conclusion if it had been aware of the incident at the diner. *Trakhtenberg*, 493 Mich at 51.

## VI. TRIAL COUNSEL'S FILE

Finally, defendant argues that his appellate counsel was not able to obtain certain documents produced by his trial counsel at the *Ginther* hearing, and requests that this Court remand this case back to the trial court to address this issue. As stated, this Court previously denied defendant's motion for a remand on this issue, although that denial was without prejudice to the case call panel's consideration of the issue. We decline to grant defendant the requested relief.

Defendant cites MCR 6.005(H)(5) in support of his request for remand. MCR 6.005(H)(5) requires a defendant's trial counsel to make the defendant's file available for copying upon the request of appointed or retained appellate counsel. Defendant also attaches to his brief on appeal an affidavit from his appellate counsel, stating that he had sent trial counsel two letters requesting documents, that he had received some of these documents, but that he had not been given the documents that trial counsel produced at the *Ginther* hearing. Defendant does not name or describe the documents in question.

We conclude that defendant is not entitled to the requested relief. The *Ginther* hearing was conducted on January 24, 2019. Defendant's appellate brief (and motion to remand) was not filed until May 2, 2019. Appellate counsel's affidavit states that "previous to the *Ginther* hearing," he sent two letters requesting documents from defendant's trial counsel, but does not state that counsel took any action *after* the hearing to obtain documents that he did not have in his file. Moreover, defendant does not explain how a remand to obtain these documents would assist him at this point, after defendant has already filed his appellate brief and after oral argument has been held.

This Court has discretion in determining when a remand is appropriate. *People v Hernandez*, 443 Mich 1, 15; 503 NW2d 629 (1993), abrogated in part on other grounds by *People v Mitchell*, 454 Mich 145 (1997). The remand procedure should not be used as an end-run around issue preservation requirements. See *id.* at 19-20. Defendant never raised the issue of an incomplete file before the trial court, either in filing his motion for a new trial, at the *Ginther* hearing, or after that hearing. Defendant has therefore forfeited further review of this issue. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999).

Affirmed.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra

-13-